## 9187

### ADAMS ET AL. v. VERNER.

#### (86 S. E. 211.)

1. **WILLS—CONSTRUCTION—FEE CONDITIONAL.**—The quoted words in a will, whereby testator devised land to a devisee, to her and the "heirs of her body," are the most apt to create a fee conditional special.

2. **WILLS—CONSTRUCTION—MEANING OF WORDS.**—Where the words of a will require a particular construction, such construction must be adopted, notwithstanding the consequences.

3. **WILLS—CONSTRUCTION—MEANING OF LANGUAGE.**—Where an estate is given by will in words of clear and ascertained legal significance, it will not be enlarged, cut down, or destroyed by superadded words in the same or subsequent clauses, unless they raise an irresistible inference that such was the intent of testator.

4. **WILLS—CONSTRUCTION—MEANING OF LANGUAGE.**—Where an estate is devised by clear and unequivocal terms, superadded words of doubtful import must be rejected.

5. **WILLS — CONSTRUCTION — MEANING OF WORDS —"ISSUE."**—The word "issue" in a will, though generally equivalent to the words "heirs of the body," is not as strong as a word of limitation as the words "heirs of the body."

6. **WILLS — NATURE OF ESTATES —"FEE CONDITIONAL"—"FEE SIMPLE" ABSOLUTE.**—A fee conditional is a fee simple, and may endure forever, and after birth of issue a fee simple conditional becomes a fee simple absolute, for purposes of alienation, forfeiture, and to charge.

7. **WILLS—CONSTRUCTION—MEANING OF LANGUAGE.**—Testatrix devised land to her daughter-in-law, "to her and the heirs of her body" by her husband, "absolutely in fee simple forever." At the date of the will the daughter-in-law had four children, and five when the devise took effect. *Held,* that the quoted words were not wholly inconsistent with the estate devised, and did not modify the conditional fee created by the first clause.

8. **WILLS—DEVISE—LIMITATIONS OF ESTATES—FEES CONDITIONAL.**—The addition of the phrase "absolutely in fee simple forever," after a devise "to A, to her and the heirs of her body by B" is a mere pleonasm, and neither adds to nor detracts from the fee conditional special taken by A, and she having issue at the time and after devise took effect, conveyed an absolute fee simple to her grantee by deed of mortgage.

Before WILSON, J., Walhalla, April, 1914.    Reversed.

FOOTNOTE.—As to the effect of superadded words of limitation on application of the rule in Shelley's case, see note in 29 L. R. A. (N. S.) 1081.

Action by Anna Catherine Adams and others against John D. Verner. From judgment for plaintiffs, defendant appeals. The facts are stated in the opinion.

*Messrs. Cothran, Dean & Cothran,* for appellant, submit: *The estate in Catherine H. Biemann, by the will of Catherine Biemann, if any, is a fee conditional:* 98 S. C. 234; 56 S. C. 549; 71 S. C. 278; 1 Rich. Eq. 400; 1 Brev. 258; 3 Rich. Eq. 572; 65 S. C. 345; 1 Rich. Eq. 404; 2 Strob. Eq. 190; 48 S. C. 440; 52 S. C. 554; 47 S. C. 288; 76 S. C. 487; Leak on Property in Lands 135; 5 Rich. Eq. 441; Harp. 92; 67 S. C. 122; 90 S. C. 470; 82 S. E. 793; 20 Pic. 514; 5 Rich. Eq. 356; 1 Strob. Eq. 344; 83 S. C. 265; 91 S. C. 183; 2 Strange 729; 1 Gray 284; 5 Gray 523; 2 Johns. Ca. 384; 10 Metc. 87; 67 Mass. 87; 71 Mass. 523; 13 Md. 415; 7 L. R. A. (N. S.) 1110; 83 S. E. 260; 69 S. C. 292; 4 Page 345; 79 Pa. St. 333. *Catherine Biemann, the elder, was seized no estate in the lands of Dietrich Biemann, as the duty was imposed upon his executor to convert his lands into money to pay his debts, he being insolvent at the time of his death:* 35 S. C. 534; 22 S. C. 92; Pom. Eq. Juris. 1011, 1013; 1 Rich. Eq. 449; *Ib.* 324. *Under the will of Dietrich Biemann, the executor had the power to mortgage the real estate to J. D. Verner for the purpose of securing the $12,000 debt, due to him by the testator:* 31 Cyc. 1080; 109 Ga. 42; 34 S. E. 341; 38 Pa. (2 Wright) 112; 78 Am. St. Rep. 164; 10 L. R. A. 756; 56 S. C. 78. *The Court will treat the action which was brought to foreclose the mortgage of September 3, 1892, executed by H. D. A. Biemann, as executor of Daniel Biemann, and by Catherine A. Biemann, the devisee, as an action to foreclose the equitable mortgage created by the agreement of February 3, 1885, made by Daniel Biemann with defendant:* 1 Jones, Mortgages (6th ed.), sec. 163; 3 DeS. 74; 1 Sp. Eq. 416; Powell on Mortgages 459, 460; 14 S. C. 116; 45 S. C. 144; 47 S. C.

100; 72 S. C. 25; 3 Pom. Eq. Juris., sec. 1237; 2 Hill Ch. 421; *Ib.* 167.

*Mr. R. T. Jaynes,* also for appellant, cites: *As to fee conditional:* 3 Rich. Eq. 271, 280; 14 S. C. 597, 608; 13 S. C. 115, 119; 71 S. C. 278; 67 S. C. 130; 8 Rich. Eq. 10; 1 Rich. Eq. 404; 48 S. C. 440; 52 S. C. 554; 86 S. C. 445, 449; 91 S. C. 300; 16 S. C. 311; 73 S. C. 469; McM. Eq. 349; 3 Rich. Eq. 559, 575; 85 S. C. 477; 25 S. C. 289; 28 S. C. 238; 6 Rich. Eq. 92; 25 S. C. 289; 17 S. C. 551; 1 Rich. Eq. 400; 76 S. C. 487; 67 S. C. 307; 1 Brev. 358. *Conclusive effect of judgment of foreclosure:* 19 S. C. 399, 400; 21 S. C. 147; 58 S. C. 530; 41 S. C. 337; 72 S. C. 499; 58 S. C. 529; 62 S. C. 482.    *Conversion of lands into money to pay debts:* 35 S. C. 534; 1 Pom. Eq. Juris., sec. 371; 5 Rich. 206; 22 S. C. 102; 27 S. C. 298; 31 Cyc. 1080; 36 N. J. Eq. 169; 56 S. C. 87; 12 S. C. 572; 51 S. C. 366; 70 S. C. 225; Bigelow, Estoppel 239.

*Messrs. Carey, Shelor & Hughes* and *Bonham, Watkins & Allen,* for respondents, submit: *The children take as purchasers under will of Catherine Bicmann:* 71 S. C. 275; 3 Strob. Eq. 66; 3 Rich. Eq. 156; 36 S. C. 38; 42 S. C. 342; 91 S. C. 300; 89 S. C. 214; 83 S. C. 269; 47 S. C. 288; 1 Strob. Eq. 344; 3 Rich. Eq. 559; *Ib.* 576; 16 S. C. 290; 28 S. C. 493; 52 S. C. 654; 48 S. C. 262; 1 Rich. Eq. 141; 35 S. C. 314; 89 S. C. 561; 165 U. S. 564.    *Effect of foreclosure proceedings:* 12 S. C. 573; 56 S. C. 87; 51 S. C. 366; 6 S. C. 188; 42 S. C. 170; 56 S. C. 78; 70 S. C. 225; 41 S. C. 337; 19 S. C. 405; 72 S. C. 501, 502; 59 S. C. 498; 68 S. C. 184; 72 S. C. 384; *Ib.* 499-502.    *Subrogation:* 41 S. C. 337; 82 S. C. 256; 59 S. C. 498.

September 10, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Catherine Biemann devised the lands in dispute in these words: "To my beloved daughter-in-law, Catherine H. Biemann, wife of H. D. A. Biemann, to her and the heirs of her body, by the said H. D. A. Biemann, absolutely in fee simple forever."

Plaintiffs are the children of Catherine H. by H. D. A. Biemann, who was the only child of testatrix. They claim, under the devise, as tenants in common with their mother. Two of them were born after the execution of the will, and one of these after the death of testatrix.

Catherine H. Biemann mortgaged the lands devised to defendant. The mortgage was foreclosed by decree of Court, and defendant purchased them at the sale, and claims the title under that sale. He claims title also, upon other grounds, legal and equitable. But, in the view which we take of the ground stated, the others need not be considered.

If the words "absolutely in fee simple forever" had not been added to the previous words of the devise, there would be no difficulty, for the words "heirs of her body by the said H. D. A. Biemann," are the most apt to create a fee conditional special.

Do the superadded words so modify the previous words "heirs of her body" as to deprive them of their ordinary legal signification, denoting an indefinite line of descent, and show that they were used in the sense of "children," or, to describe a class whose members testatrix intended should take directly from her, under the devise, and not by descent through Catherine H. Biemann?

The ground upon which the affirmative of this question is based is that the superadded words are repugnant to an estate in fee conditional, but consistent with an estate in fee simple, and, therefore, by implication, a fee simple must have been intended.

If this contention be sound, as there is nothing in the superadded words, or other parts of the will which indicates, or even suggests, that the words "heirs of her body" were

used to denote "children," those words would have to be construed as descriptive of a class, the members of which were intended to take, and the "children" would take only by reason of the accidental circumstance that there were no others who answered description, at the death of testatrix, the time when the devise took effect. If the circumstances had been different, and if some of the children had died, during the life of testatrix, leaving children, and some of these had in turn died, leaving children, all who satisfied the description, and were "heirs of her body by the said H. D. A. Biemann," at the death of testatrix,—children, grand-children, and great-grandchildren,—would have taken, and *per capita,* and the after-born child would have been excluded. *Myers* v. *Myers,* 7 S. C. Eq. (2 McC. Ch.) 214; *Lemacks* v. *Glover,* 18 S. C. Eq. (1 Rich. Eq.) 141; *Folk* v. *Varn,* 30 S. C. Eq. (9 Rich. Eq.) 303. Could testatrix have intended such consequences? Nevertheless, if the words require such a construction, the consequences would not prevent it. This construction also involves the legal incon-sistency of a living person having "heirs of her body."

On the other hand, one of the soundest rules of construc-tion, founded by the sages of the law, the wisdom of which has been approved by succeeding generations as affording security and certainty to estates, is that, where an estate or interest is given in words of clear and ascertained legal sig-nification, it shall not be enlarged, cut down, or destroyed by superadded words in the same or subsequent clauses, unless they raise an irresistible inference that such was the inten-tion. The rule is thus stated in *Carr* v. *Porter,* 6 S. C. Eq. (1 McC. Ch.) 61: "An estate may be enlarged, controlled and even destroyed by implication; but the principle must be taken subject to certain other well established rules, as that where an instrument is reduced to writing, nothing is to be implied which does not arise from the face of the writing. An estate by implication cannot be raised in direct contra-diction to and denial of an express estate. An estate by

implication can only arise by a necessary implication, and the necessity must appear· on the face of the will. · Such implication is inadmissible where the provisions of the will can otherwise be carried into effect." In *Jesson* v. *Wright,* 2 Bligh 1, Lord Eldon, in considering the effect of superadded words upon a limitation to W. for life, and after his death, to the "heirs of his body," which created an estate tail, said: "And in order to cut down this estate it is absolutely necessary that a particular intent should be found to control and alter it, *as clear as the general intent here expressed.* The words 'heirs of the body,' will indeed yield to a particular intent that the estate shall be only for life, and that may be from the effect of superadded words, or by expressions showing the particular intent of the testator, *but that must be clearly intelligible and unequivocal."* In the same case, Lord Redesdale said: "It cannot at this day be argued that, because the testator uses in one part of his will words having a clear meaning in law, and in another part other words inconsistent with the former, that the first words are to be cancelled or overthrown. * * * It is dangerous, when words have a fixed legal effect, to suffer them to be controlled, *without some clear expression or necessary implication.* In this case, it is argued that the testator did not mean to use the words 'heirs of the body' in their ordinary legal sense, but because there are other inconsistent words; but it follows that he was ignorant of the effect of the one ·or of the other." His Lordship then bases his conclusion upon the rule, *"that technical words shall have their legal effect, unless from subsequent inconsistent words it is very clear that the testator meant otherwise,"* and adds: "It has been argued that 'heirs of the body' cannot take as tenants in common; *but it does not follow that the testator did not intend that heirs of the body should take, because they cannot take in the mode prescribed.* This only follows that, having given to heirs of the body, he could not modify that

gift in the two different ways which he desired, *and the words of modification are to be rejected.*"

The inference is by no means necessary, or even clear, that testatrix intended that, if Catherine H. Biemann could not take the fee conditional devised, or, if it could not descend to the heirs of her body *"absolutely in fee simple forever,"* she should not take such an estate at all, and that the whole estate so devised to her should be cut down to an undivided interest therein, as tenant in common with those who might answer the description of "heirs of her body" at the death of testatrix. Having given such an estate in clear and unequivocal terms, and the superadded words being of doubtful import, they must be rejected, as a mere pleonasm. That which is of doubtful inference must yield to that which is certain.

It is clear that testatrix was ignorant of the legal effect of the one expression or the other, or she would not have used both. Such pleonastic and tautological expressions are of common occurrence in deeds and wills. We often find a grant or devise to one "and his heirs and assigns," followed by such words as "in fee simple forever," or, "absolutely in fee simple forever." In such cases, the superadded words have no legal effect, because they add nothing to the estate limited. It is only when their precise legal significance is repugnant to the estate limited that they raise a doubt as to the intention.

Numerous instances of the application of this rule will be found in our own decisions. We cite only a few:

In *McAllister* v. *Tate,* 45 S. C. L. (11 Rich. L.) 509, there was a devise to A. "in fee simple for life;" *held,* that A. took the fee, and the words "for life" were rejected as absurd, or as repugnant to the estate already devised.

In *Moore* v. *Sanders,* 15 S. C. 440, there was a devise to M. "in fee simple—to dispose of as he may think fit. But should he die without leaving a will, then the whole to go

*"over."*   *Held,* that M. took the fee, and that the limitation over was void, because repugnant to the fee devised.

In *Allen* v. *Fogler,* 40 S. C. L. (6 Rich. L.) 54, there was a conveyance to H. A. *"and to the heirs of her body,* and in case of her death before she has an heir, I desire whatever I may give to her, may be the right and property of Josiah Gillett Allen, and in case of his death before he has an heir to belong to Harriett Allen." After describing the property which was intended for each of the grantees, the deed concluded: "Which said property I relinquish to them and their heirs forever." *Held,* that H. A. took a fee conditional, and that the limitation over was void, because a fee cannot be mounted on a fee in a deed. It will be noted that the concluding words, "to them and their heirs forever," were not allowed to have the effect of modifying the estate first limited.

In *Clark* v. *Neeves,* 76 S. C. 487, 57 S. E. 614, 12 L. R. A. (N. S.) 298n, there was a deed to W. A. Clark, in trust for Eleanor B. Clark, "for and during her natural life, and at her death the said premises are to belong of right *in fee simple* to the lineal heirs of the said Eleanor B. Clark forever." It was contended that the words "lineal heirs" were so modified by the words "in fee simple" and "forever" as to deprive them of their ordinary legal effect, and convert them into words of purchase, but the Court held that Eleanor B. Clark took a fee conditional, and, in concluding the discussion said: "And, furthermore, the added words are quite as consistent with the theory that they take the fee by inheritance as that they take by purchase." If the words "in fee simple" and "forever" are as consistent with the theory that "the lineal heirs of the said Eleanor B. Clark," which were held to be equivalent to "heirs of her body," should take by inheritance as by purchase, it is difficult to see why the words "absolutely in fee simple forever" should not be as consistent with the theory that the heirs of the body of

Catherine H. Biemann by H. D. A. Biemann should take by inheritance as by purchase.

In *Simms* v. *Buist,* 52 S. C. 554, 30 S. E. 400, there was a devise to A. for life, and, upon her death, "to go and vest in the heirs of her body, in such shares as they would take as her representatives at law, free and discharged of all further trusts *and limitations;" held,* that A. took a fee conditional. The superadded words were held to be insufficient to take the devise out of the rule in Shelley's case, or to show the intention that the heirs of the body should take as purchasers.

The cases relied upon to sustain the decree of the Circuit Court are not inconsistent with the construction which we have adopted. In *Johnson* v. *Johnson,* 16 S. C. Eq. (McM. Eq.) 345, there was a devise to M. "and to her *children* after her." It was held that, by the express terms of the will, the children could not take along with the mother, as immediate devisees, for they were to take "after her," nor, by way of remainder the devise being immediate. But, as the intent to benefit the children appeared, it was held, under the rule in Wild's case, 6 Coke 16, that the mother took an estate transmissible to them.

In *McLure* v. *Young,* 24 S. C. Eq. (3 Rich. Eq.) 559, there was a devise to C. "for and during the term of her natural life; and at her death, I give, bequeath and devise the same, absolutely and forever, to her lineal descendants; and in case she should die without lineal descendants (one or more) living at the time of her death," *over; held,* that C. took a life estate, with remainder to her lineal descendants as purchasers. There are four features of that devise, all wanting in this, which together determined the construction: 1. There, an estate for life was expressly given to C. 2. At her death there was a separate and distinct devise of the same property "absolutely and forever to her lineal descendants." 3. A limitation over, in the event of her death without lineal descendants (one or more) living at the time of

her death.   4. The language of the devise was so closely assimilated to that of the statute of distributions, and the limitations were so similar to the method of distribution provided by the statute, that the Court inferred that testator had in mind and intended to provide a scheme of distribution among the lineal descendants according to the statute, with a slight modification; and, as the statute confers a fee simple upon distributees taking under it, the inference that testator intended to give "the lineal descendants" the remainder, in fee simple, was strengthened.

In *Reeves* v. *Cook,* 71 S. C. 275, 51 S. E. 93, the Court construed two deeds conveying lands to "G. and the heirs of her body which she *has or may have* by M., her husband;" and to "G. and her heirs that she *has now or may have* by M." The words italicized showed clearly that the words "heirs" and "heirs of her body" were not in their legal sense, but to denote children.

In *Rembert* v. *Evans,* 86 S. C. 445, 68 S. E. 659, a deed was construed which expressly provided for "M. and her children" in three places, and in one place, the words "M. and the heirs born of her body" were used. But the deed, as a whole, showed clearly the intention to provide for M. and her children, and it was held that the words "heirs born of her body," used in one place were not used in their technical sense, but to denote children.

In *Porter* v. *Lancaster,* 91 S. C. 300, 74 S. E. 374, there was a deed "to my wife, P., and the *issue* of her body by me." *Habendum,* "unto the said P. and the *issue* of her body, as aforesaid, *their heirs and assigns forever.*" It will be observed that the word "issue" was there used, which, though generally equivalent to the words "heirs of the body" in a will, is not as strong, even in a will, as a word of limitation as the words "heirs of the body." *Whitworth* v. *Stuckey,* 18 S. C. Eq. (1 Rich. Eq.) 404, 410; *Simms* v. *Buist,* 52 S. C. 554, 558, 30 S. E. 400. Some of our older decisions hold that the word "issue" in a deed is ordinarily

a word of purchase.    *Markley* v. *Singletary,* 32 S. C. Eq. (11 Rich. Eq.) 393.    But, in *Williams* v. *Gause,* 83 S. C. 265, 65 S. E. 241, it was held to be a word of limitation in a deed.    Note further, that besides the direct gift to the *"issue,"* there was a limitation to *"their heirs and assigns forever,"* which showed clearly that *issue* meant children.

These observations apply with equal force to the case of *McIntyre* v. *McIntyre,* 16 S. C. 290, except that the instrument there construed was a will.    Moreover, the devise in that case was to testator's children, *nominatim,* for life, and, at their decease, "to the issue of them *and their heirs and assigns forever."*    The Court held that the words italicized manifested the intention that the issue should take as purchasers.    So, in *Boykin* v. *Ancrum,* 28 S. C. 495, 6 S. E. 305, decided on the authority of *McIntyre* v. *McIntyre,* the devise was to A. for life, "and from and after his decease, to his lawful issue, *absolutely and in fee simple."*    But if A. should die, leaving no lawful issue at the time of his decease, *over; held,* that the issue took as purchasers.    There, the gift in express terms of a life estate to A., the use of the word "issue" followed by the words "absolutely and in fee simple, and the limitation over,—all combined,—manifested the intention that the "issue" were not to take in indefinite succession, but as a class at the death of A.    If the devise had been simply to "A. and his issue, absolutely and in fee simple," it would have been more nearly like that under consideration, though not precisely like it, on account of the difference, above referred to, between the legal effect of the word "issue" and "heirs of the body."

Thus far, we have considered the devise upon the assumption that the superadded words, "absolutely and in fee simple forever," are inconsistent with it.    And, while they are, in some respects and to some extent, inconsistent with a strictly technical conception of a fee conditional, let us consider the nature of that estate, to ascertain whether they are so utterly inconsistent with it that they could not, even with

2—102

a fair degree of legal accuracy, be used in connection with it. A fee conditional is a fee simple, and it is often spoken of in books as "a fee simple conditional." Littleton says: "A man cannot have a more large or greater estate of inheritance than a fee simple," and Lord Coke adds: "This doth extend as well to fee simples conditional and qualified, as to fee simples pure and absolute. For our author speaketh here of the ampleness and greatness of the estate, and not of the perdurableness of the same. And he, that hath a fee simple conditional or qualified, hath an ample and great an estate, as he that hath a fee simple absolute so as the diversity appeareth between the quantity and quality of the estate." 1 Coke on Littleton 503.

From this, the principal difference between these estates appears to lie in the possibility of the duration thereof. Now, a fee conditional may endure "forever," and we find that word almost invariably engrafted upon such limitations, and it is natural and appropriate to express the intentions that the estate shall endure so long as any person may be found, however remote, in the line of descent specified. As descriptive of the quantity of the estate, the word "absolutely" adds nothing in meaning to the words "in fee simple forever." After the birth of issue, a fee simple conditional becomes a fee simple absolute for at least three purposes; to alien, to forfeit, and to charge. Indeed, there is high authority for saying that it is such before issue born, subject only to be defeated by failure of performance of the condition. Plowden 235, 250. At date of the will, Catherine H. Biemann had four children, and five, when the devise took effect. Testatrix may have assumed the practical certainty of the performance of the condition, and, therefore, the nature of the estate that would vest in her. It follows that the superadded words are not wholly inconsistent with the estate devised. At most, they are not so inconsistent with it as to warrant the inference that they were not a mere redundant expression, but were used intentionally to modify the

estate devised. We must remember that we are construing not merely the superadded words, but the clause in which they are found as a whole. In the first words of this clause, a fee conditional is given in clear and unambiguous terms. Reason and authority require that something unequivocal must be found in the subsequent words to show that testatrix did not mean what she said.

Judgment reversed.