## 9457

### BURRISS *ET AL.* v. BURRISS *ET AL.*

#### (89 S. E. 405.)

1. WILLS —CONSTRUCTION —INTENTION OF TESTATOR. —Determination of the testator's intention is the paramount rule of construction.

2. WILLS—CONSTRUCTION—CONSTRUCTION AS A WHOLE.—A will must be read as a whole so as to give, if possible, harmonious meaning and effect to its every clause.

3. WILLS — CONSTRUCTION — TECHNICAL WORDS.—Technical words in a will must have their technical sense, unless the context clearly shows another meaning was intended.

4. WILLS— CONSTRUCTION— NATURE OF ESTATE CREATED— CONDITIONAL FEE.—Where a will devised property to testator's infant daughter, and later provided that when she became of age and the time arrived for her to take possession thereof, it should be placed in trust for her and the heirs of her body, etc., *held* that a conditional fee, not a fee simple, was devised.

Before GARY, J.; Anderson, April, 1915. Reversed.

Action for partition by Wm. M. Burriss and others against J. L. Burriss and others. Judgment for defendant, J. L. Burriss, and plaintiffs appeal.

*Messrs. Joseph N. Brown, J. M. Padgett* and *Ernest F. Cochran,* for appellants, submit: *A fee conditional cannot be the subject of a devise by will, and upon the death of the donee without heirs of the body, the estate reverts to the heirs of the testator:* 17 S. C. 549; Harpers Law, 92; 5 Rich. Eq. 441. *In ascertaining what was the intention of the testator, the Courts have wisely established certain rules for their own government in order to exclude themselves from the exercise of an unlimited and arbitrary discretion in each particular case:* 59 S. C. 148; 102 S. C. 240; 1 Nott & McCord 69; 3 Jarman Wills 699, *et seq. In ascertaining the testator's intention, the entire will must be considered and not merely isolated statements or separate clauses, and the will should be so construed as to make it a consistent whole as far as possible:* 1 DeSaus. 241; 1 Strob. Eq. 96; 2 DeSaus. 451; 30 Am. & Eng. Ency. Law (2d ed.) 663; 3 Jarman Wills 705; 59 S. C. 148; 102 S. C. 240. *Such construction must be made as will give effect to all parts of the will, and it is the duty of Courts to seek that construction which will permit every part of the will to stand:* 9 S. C. 229; 4 Rich. Eq. 22; 23 S. C. 236; 57 S. C. 176; 71 S. C. 203, 207; 59 S. C. 148; 102 S. C. 240; 28 S. C. 238; 47 S. C. 294; 90 S. C. 474; 1 DeSaus. 241; 30 Am. & Eng. Ency. Law (2d ed.) 664; 3 Jarman Wills 707; and cites as to fees conditional: 91 S. C. 184; 8 Rich. Eq. 10; 1 Rich. Eq. 404; 48 S. C. 440.

*Messrs. Watkins & Prince* and *J. P. Carey,* for respondent, cite: *As to rule of construction:* 9 S. C. 229. *Devise of fee:* 2 DeS. 573; 23 S. C. 232; 93 S. C. 213; 102 S. C. 7; 91 S. C. 59. *Void conditions:* 15 S. C. 440. *Fee conditional never raised by implication:* 2 Bail. 231; 85 S. C. 84. *Circumstances showing intention:* 30 S. C. 184; 19 S. C. 297.

July 16, 1916.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

William R. Burriss died in 1862, leaving his will, in the second paragraph of which he made provision for his widow, part of which was to be used to procure a home for her, and all of it was to be placed in the hands of a trustee, to be appointed by the Court of equity, to be disposed of as follows: If the widow should marry, half of it was to be secured and applied to the use and benefit of testator's daughter, Julia; if she should remain single till her death, all of it was to be so applied. In the third paragraph, he provided for his only child, Julia, who was an infant and the issue of a previous marriage, in the following language:

"I further will all the residue of my estate, both personal and real, unto my daughter, Julia, which is to be managed as hereinafter directed I appoint John B. Watson Guardian of my above named daughter Julia until she attains the age of twenty-one years and to see that she has a liberal education, and when the time arrives that she is to go into the possession of sd. property that is to be pace in the hands of John B. Watson whome I constituted and appointed Trustee for her and the heirs legally born of her body the sd. heirs to go into possession at the time prescribed by law."

When she attained her majority, Julia took possession of the land devised to her, and retained it until her death. Late in life, about the year 1902, she married the defendant, J. L. Burriss, and died in 1914, leaving a will in which she devised the land to her husband, who has possession of it, claiming title under her will. The plaintiffs, as heirs at law of W. R. Burriss, sue for partition, contending that Julia took a fee conditional under her father's will, and, as the condition was never performed, the land reverted to them.

The sole question, therefore, is whether, under a proper construction of her father's will, Julia took a fee conditional,

as contended by plaintiffs, or fee simple, as contended by the defendant, J. L. Burriss. It is admitted, and it is apparent, that the will was drawn by an unlettered layman. The language used is so inartificial and so different from that usually found in wills that we cannot hope to derive much assistance from decided cases in construing it, otherwise than from the general rules which they lay down by which we are to be guided in ascertaining the intention of the testator. The Circuit Judge held that Julia took a fee simple, basing that conclusion upon the application of the rule thus stated in *Howze* v. *Barber,* 29 S. C. 470, 7 S. E. 819:

"Where an absolute and unqualified estate is first created in words which import absolute and uncontrollable ownership, words relied upon to show that the testator intended to cut down such an estate, or to affect it with any trust, must not only be mandatory, but must in themselves show the manner in which they are to operate, so that the purpose of the testator may clearly appear—how or in what degree he intended to cut down the estate previously created, or what was the precise nature of the trust he intended to impress upon it."

There can be no doubt of the soundness of that rule. It has been frequently applied to our decisions, as will be seen by reference to a few of the most recent cases: *Jennings* v. *Talbert,* 77 S. C. 457, 58 S. E. 420; *Walker* v. *Alverson,* 87 S. C. 55, 68 S. E. 966, 30 L. R. A. (N. S.) 115; *Smith* v. *Smith,* 93 S. C. 215, 76 S. E. 468; *Adams* v. *Verner,* 102 S. C. 7, 86 S. E. 211. In the case last cited, we quoted with approval the following language from the opinion in *Carr* v. *Porter,* 6 S. C. Eq. (1 McCord. Eq.) 61:

"An estate may be enlarged, controlled, and even destroyed by implication; but the principle must be taken subject to certain other well-established rules, as that where an instrument is reduced to writing, nothing is to be implied which does not arise from the face of the writing. An estate by implication cannot be raised in direct contradiction

to and denial of an express estate. An estate by implication can only arise by a necessary implication, and the necessity must appear on the face of the will. Such implication is inadmissible where the provisions of the will can otherwise be carried into effect."

There are, however, other rules of equal importance. The first and most imperative—that to which all others are sub-subservient—is that we must ascertain the intention, and, having done so, effect must be given to it, unless it conflicts with some settled rule of law.

Another cardinal rule is that, in ascertaining the intention, the will must be read as a whole, and force and effect must be given to all parts of it, every clause, phrase, and word, if it can be done by any reasonable method of construction, so as to harmonize them with each other and with the whole, and in doing this technical words used must have their technical sense, unless it clearly appears from the context that they were intended to have some other meaning. All the rules of construction are intended to operate harmoniously in their application, and they will rarely conflict with each other, except when erroneously applied.

Without detracting in the least from the rule applied in the Court below, we think the learned Judge overlooked some of those above stated, which are of equal importance. The construction adopted fails to give any effect whatever to that portion of the will which says that, when the time arrives for Julia to go into possession of the property, it is to placed in the hands of a trustee "for her and the heirs legally born of her body, the said heirs to go into possession at the time prescribed by law." Evidently the Judge had in mind that such was the effect of his construction when he said in his decree:

"In applying the rule, words and passages absolutely irreconcilable with the general context may be rejected in order to effect such intention."

And counsel for respondent says, "These words are without legal meaning or effect." We shall endeavor to show that they are not irreconcilable with the context, and that they have a legal meaning and effect which must be given to them. While it is true that the Courts do not favor creating an estate by implication, as seen from the citation from *Carr* v. *Porter, supra,* there is more than a mere implication in the words of the will above quoted. The intention is not a mere inference from doubtful language, but it is expressed in what seems to be plain and unmistakable terms that, when that time arrives, the property is to be placed in the hands of a trustee for Julia and the heirs of her body; the said heirs to take possession at the time prescribed by law, which, of course, means at the death of their mother, if they took under the devise. The language used leaves no doubt of the intention that the devise should inure to the benefit of the heirs of the body, words "most apt" to create a fee conditional.

It is said, however, that the estate is devised directly to Julia, and nothing is given directly to the trustee either for her or the heirs of her body, and nothing is given directly to the heirs of her body. True, but the language used shows clearly that such was the intention. Leaves out the provision for the management of the property during Julia's minority, and couple the expression creating the trust directly to the gift to Julia, and it would read thus:

I give the residue of my estate to my daughter, Julia—the said property is to be placed in the hands of John B. Watson, as trustee for her and the heirs of her body.

If it had been so expressed, I apprehend there would have been no doubt of the intention or of the construction. Yet that is what the language means. The fact that the direction as to the management of the estate during Julia's minority and the time when it should be placed in the hands of the trustee is thrown in between the gift to Julia, and the

direction that it should be put in the hands of a trustee should not obscure the meaning.

The gift to the widow was in similar terms: "I will unto my dear wife one negro boy," etc., and, after describing the property given and the purpose for which it was given, he says:

"All of which is to be placed in the hands of a trustee to be appointed by the Court of equity and to be disposed of as follows."

Certainly the trust there created does not arise from implication or doubtful inference, but from the express language used. And it is as clearly expressed in the devise to Julia. But, even if it could be correctly said that the language used does not in terms express the intention that the devise was for the benefit of Julia and the heirs of her body, the implication that it was so intended is not only irresistible, but absolutely necessary to give effect to all the provisions of the will. That it arises upon the face of the will, and that it is necessary to carry into effect the provisions of the will, cannot be gainsaid. Therefore, under the rule quoted from *Carr* v. *Porter,* it would be permissible. But, as above stated, we think the intention is expressed in plain terms.

While there is no doubt of the soundness or wisdom of the rule that "When a gift is made in one clause of a will in clear and unequivocal terms, the quality or quantity of the estate given should not be cut down or qualified by words of doubtful import found in a subsequent clause," it must be applied with the caution that the purpose of the rule, as well as all of its parts, should be constantly kept in mind and observed. If we apply the first part of it without regard to the second, we shall be led into error; for, in the majority of cases, modifications or limitations of the estate given or trusts declared with respect thereto appear in subsequent parts of the instrument, whether will or deed, sometimes in the same clause or paragraph, but more frequently

in subsequent clauses or paragraphs. But whether they appear in the same or in subsequent clauses or paragraphs or parts of the will or deed is of no consequence, provided the intention to modify or limit the estate first given, or to declare or create a trust in respect thereto, appears, either in express terms or by necessary implication. This is well illustrated by numerous cases in our reports. We refer to only two of them. In *McCown* v. *King,* 23 S. C. 232, there was a deed, in the usual and regular form, conveying a tract of land to James King, his heirs and assigns forever, with full covenant of warranty. Following and at the very end of this deed were these words:

"In trust, nevertheless, for the benefit of the heirs of his body, and not subject to any debts now or hereafter to be contracted by him, and at his death to be equally divided between the heirs of his body."

The Court held that James King took no beneficial interest under the deed, but he was simply a trustee for the heirs of his body, who took as purchasers. In *Boyles* v. *Wagner,* 91 S. C. 183, 74 S. E. 380, the will of Henry Boyles was construed. In the first paragraph testator provided that his whole estate should be kept together until his youngest daughter should become of age, marry, or die; in the second, that, when either of the events named occurred, the whole estate should be divided equally among his children, share and share alike; in the third, he said:

"It is my will and desire that the portions of my estate, both real and personal, which either one of my sons or daughters shall receive, shall not be liable for the payment of any debts or contracts which any one of them may at any time contract, or for the payment of any debts, contracts or engagements of any husband or. husbands, which either one of my daughters may hereafter marry, but it is to be for the sole separate use, benefit and behoof of them and the heirs of their body forever, and I hereby appoint my friend, John W. Freeman, trustee for my son, Henry, and my said son,

Henry, and the said John W. Freeman trustees for the other children."

This Court held that the devisees took fees conditional. The similarity of the Boyles' will to the one under consideration is striking. In neither is the gift in the usual form— to the devisee and the heirs of his body. In both trustees were appointed, but with nothing to do, so that the statute executed the trust. The Boyles will said the property "is to be for the sole separate use, benefit and behoof of them and the heirs of their body forever." The Burriss will says, "It is to be placed in the hands of Watson as trustee for her and the heirs of her body." There is no repugnancy or inconsistency between the estate first given to Julia and the subsequent limitation thereof in favor of the heirs of her body, as there was in the devise construed in *Adams* v. *Verner,* and the cases therein referred to. To be sure, if there had been no subsequent modification or limitation of the gift, Julia would have taken a fee simple, but it was not in terms a fee simple to begin with. Without the subsequent limitation, it would have been held to be a fee simple only by virtue of the statute (section 3571, Civ. Code 1912), which provides that:

"No words of limitation shall be necessary to convey an estate in fee simple by devise, but every gift of land by devise shall be considered as a gift in fee simple, unless such a construction be inconsistent with the will of the testator, expressed or implied."

In this case, a fee simple is inconsistent with the express terms of the will. This construction harmonizes and gives effect to all parts of the will.

Judgment reversed.