## BLYTHE v. GOODE et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1920.)

No. 1787.

1. **Deeds ⊜128—Tendency is to restrict application of rule in Shelley's Case.**

Though the rule in Shelley's Case was originally based on public policy, and intended to hasten vesting of estates and facilitate alienation, its effect is frequently to enforce a technical construction contrary to the intent of the grantor or testator, and the tendency of courts is to restrict its application.

2. **Deeds ⊜128—Rule in Shelley's Case applies only where technical expression is used.**

The rule in Shelley's Case, according to the decisions in South Carolina applies only where the language is directly within its terms, and not where the words of inheritance are limited or qualified by additional words, varying or contradicting the construction necessarily placed upon those words by the rule.

3. **Deeds ⊜128—Rule in Shelley's Case does not apply to remainder to heirs of one of two life tenants.**

The rule in Shelley's Case does not apply to a deed conveying the estate to two persons for life, with remainder to the heirs of the body of one.

4. **Deeds ⊜128—Conveyance subject to charge held not within rule in Shelley's Case.**

A conveyance, subject to a charge thereon for the support of grantor's father for his life, to grantor's brother for his life, and after his death to the heirs of his body and their heirs and assigns forever, is a variation from the technical language to which the rule in Shelley's Case applies, and indicates an intention that the heirs of the brother should take as purchasers, so that the rule in Shelley's Case does not apply, and the conveyance gives the brother only a life estate, not a fee conditional on the birth of issue.

Appeal from the District Court of the United States for the Western District of South Carolina, at Greenville; Charles A. Woods, Judge.

Suit for partition by Minnie L. Goode and others against E. M. Blythe and others. From a decree finding the defendant Blythe the owner of a one thirty-sixth undivided interest in the tract of which he claimed entire ownership, that defendant appeals. Affirmed.

The opinion of Woods, Circuit Judge, in the court below, was as follows:

In this suit for partition the facts are agreed on. In 1887 O. Norman Good conveyed to his brother, V. G. Good, a tract of land containing 34½ acres, more or less, in and near the town of Marietta, county of Greenville, S. C. The granting clause was to V. G. Good simply. The habendum was "to V. G. Good for and during his natural life, and after his death to the heirs of his body, their heirs, and assigns forever." Subsequently V. G. Good, after having children, conveyed part of the land to the defend-

ant Nannie J. Good, and later the remainder to his wife, Susan C. Good. Susan C. Good conveyed to C. F. Dill, who conveyed by quitclaim deed to the defendant E. M. Blythe. On the 16th day of July, A. D. 1915, V. G. Good died, leaving as the heirs of his body the plaintiffs, Minnie L. Goode and Alma G. Turner, and the defendants Flora Wade, Tweedie Good, B. H. Good, May Good, and V. G. Good, Jr.

The plaintiffs and the defendants named claim that under the terms of the deed of O. Norman Good to their father, V. G. Good, he took a life estate with remainder to them and his other children. The defendants Nannie J. Good and E. M. Blythe contend that V. G. Good took a fee conditional under the deed of O. Norman Good, and that, having children at the time, his conveyance to Nannie J. Good and Susan C. Good conveyed the absolute fee simple to his grantees.

The sole question, therefore, is whether the deed falls under the rule in Shelley's Case as applied by the courts of South Carolina. "The rule is that where an estate of freehold, legal or equitable, is limited by deed or will or other writing to a person, and the same instrument contains a limitation by way of remainder of the same legal or equitable character, either mediate or immediate, with or without the interposition of another estate, to his heirs, his issue or the heirs of his body, as a class of persons to take in succession from generation to generation, the word 'heirs' or 'issue' is a word of limitation; i. e., the ancestor takes the whole estate comprised in this term. Thus, if the limitation be to the heirs of his body, he takes a fee conditional; if to his heirs general, a fee simple." Carr v. Porter, 1 McCord, Eq. 83; Daniel v. Whartenby, 17 Wall. 639, 21 L. Ed. 661.

Had this grant been to Valentine G. Good for his natural life, and after his death to the heirs of his body, it would have been a typical case for the application of the rule. The plaintiffs' contention is that the additional words, "their heirs and assigns forever," express an intention of the grantor to make the heirs of the body of the first taker a new stock of inheritance— the stock of a new descent, thus breaking the line of inheritance from the first taker. In England, under grants and wills in the exact words of this conveyance, the distinction stated has been held to have no foundation. But there the added words do not constitute a new stock of inheritance, because under the rule of primogeniture there would be only one heir of any ancestor—if there were sons, the eldest was the sole heir; if daughters only, they took collectively as one heir. Hence a grant to A. for life, and then in the plural to the heirs of his body, would not designate any particular person or persons as the heir or heirs, but must necessarily mean indefinite succession of heirs of the body from generation to generation, and the added words, "their heirs and assigns," could not have the effect of limiting this indefinite succession of heirs of the body. 2 Fearne, 230; Jarman on Wills, 1177.

In England the rule applies also to a devise to A. for life and at his death to the *heir* of his body, because heir is nomen collectum, equivalent to heirs, and may mean the heir who from time to time answers that description, and not that person alone who shall first answer that description. 2 Fearne, 230. But in 1 Preston on Estates, 282, it is said: "That all possible heirs of the given description are to take in succession from generation to generation under the name of heirs of the ancestor is to bring the case immediately within the rule. That only one individual or several individuals is or are to take in the character of heirs, or, rather, as particular persons described by that name, either for their lives only, or *for an estate or inheritance to be deducted from them as the stock or ancestor, and that their heirs are described by superadded words of limitation and as their descendants, is to exclude the rule.*" 4 Kent, 221. The italicized limitation was applied to take the case out of the rule in Archer's Case, 1 Coke, 65. There the devise was to Robert Archer for life, "and afterwards to the next heir male of Robert and to the heirs male of the body of such heir male." It was held that Robert took a life estate only, with contingent remainder to the next heir male. The reasoning was that the testator had ingrafted such words of limitation on the devise to the next heir male as indicated an intention to use the word "heir" as descriptive merely of the individual who should fill

269 F.—35

the character of the heir male at the ancestor's decease; the superadded words' had the effect of starting a new line of inheritance, the indefinite succession from generation to generation not being from Robert, but from the person who at his death answered the description of the heir male of his body. 2 Jarman on Wills, 326; 1 Fearne, 197; 2 Fearne, 240; Willis v. Hiscox, 4 M. & C. 197. So, also, it was held, if a devise be to A. for life, and then to the heirs male of his body and their heirs female, the rule does not apply, because what would have been an indefinite succession in the heirs male without the added words was broken by a new succession in the heirs female. 2 Fearne, 240.

Having in view the law of inheritance in South Carolina, where primogeniture is absent, the reasoning of the English courts would result in holding that V. G. Good did not take a fee conditional, but a life estate, with remainder to those who answered the description of heirs of his body at the time of his death. If it were otherwise, the words "their heirs and assigns" would have no meaning. The heirs of his body would be his children or grandchildren, to the exclusion of his wife; their heirs would be their children and husbands or wives. Thus applying the reasoning of the English cases there is no indefinite succession of heirs of the body of V. G. Good; for that succession is broken by the indefinite succession of their heirs. As in England, under the rule of primogeniture, a devise for life to the heir male of the body and then to his heirs, "heir male" means the particular person who answered to the description of heir male of the ancestor at the time of his death, to the exclusion from the succession of the collective heir female and then to heirs of such heir male in indefinite succession, so in South Carolina and the other states of the Union where primogeniture does not obtain, the words "heirs of the body" in such a limitation mean the particular persons who answered to the description of heirs of the body at the time of the death of the ancestor, to the exclusion of husband and wife of the first taker and then in indefinite succession to the heirs generally of the heir of the body of the first taker.

While inconsistent dicta will be found, the adjudications in South Carolina clearly maintain this doctrine. McIntyre v. McIntyre, 16 S. C. 290, must be regarded the leading case, because it reviews the previous decisions and decides the express point. The authority of this case has been generally recognized, not only in the courts of South Carolina, but in courts of other states. There the devise was "to S. for life, and from and immediately after her decease to my children now living (naming them), likewise for the term of their natural lives and to be divided amongst them share and share alike, the children of deceased parents representing such deceased parents and taking his or their share only, and, finally, upon the decease of my said children now living, and that now in process of being, to the issue of them and their heirs forever." The court uses this language: "'To the issue of them and their heirs forever.' Now, what does this language mean? It cannot mean that the issue of the children are to take by descent, because, if that construction is placed upon it, then the result would be that the issue, if they could take at all, would take an estate in fee conditional, while the language declares that the issue are to take in fee simple, for it is clear that no more appropriate language could be used to create an estate in fee simple in the issue than the language employed—"to them and their heirs forever." Hence, to apply the rule in Shelley's Case to the devise under consideration would defeat both the intentions of the testator, declared in express terms: (1) That the children should take estate, for their lives only. (2) That their issue should take estate in fee simple."

Without quoting the exact language under consideration in each case, it is safe to say this statement of the law is supported by the following South Carolina authorities: Dott v. Willson, 1 Bay, 457; McLure v. Young, 3 Rich. Eq. 559; Lemacks v. Glover, 1 Rich. Eq. 141; Myers v. Anderson, 1 Strob. Eq. 344, 47 Am. Dec. 537. It is significant that Boykin v. Ancrum, 28 S. C. 495, 6 S. E. 305, 13 Am. St. Rep. 698, and the latter cases of Williams v. Gause, 83 S. C. 265, 65 S. E. 241, and Adams v. Verner, 102 S. C. 17, 86 S. E. 217, recognize and reaffirm McIntyre v. McIntyre. It is true that some of these

cases involved bequests of personal property, but the basis of the ruling, as stated by the court, was that because such language in a devise of real property would not create a fee conditional, but only a life estate in the first taker, therefore it would have a like effect in a bequest of personal property; that is, it would not create an absolute property in the first taker, but only a life estate with remainder to the heirs of the body. It is true that the word "issue," and not "heirs of the body," was used in a will in McIntyre v. McIntyre; but in Williams v. Gause, supra, the court says: "Our conclusion is that the correct rule is stated in the cases first mentioned, and that 'issue' is a word of limitation, except when the language of the deed shows that it was intended as a word of purchase." Hence it follows that in McIntyre v. McIntyre the word "issue" in the will was equivalent to "heirs of the body" in a deed, and if the court had been construing a deed, instead of a will, the words "heirs of the body," the result would have been the same. It is true in Williams v. Gause the court says: "In the case of Clark v. Neves, Mr. Justice (now Chief Justice) Jones, after discussing the case of Miller v. Graham, 47 S. C. 288, 25 S. E. 165, and others, says: * * * 'As the office of the habendum in a deed is to determine what interest or estate is granted by the deed, the foregoing cases would appear to be conclusive that, if the deed in the present case had been to 'A. for life, and at her death to her lineal heirs, their heirs and assigns, forever,' A. would take a fee conditional, and that no greater effect could be given the superadded words 'in fee simple forever.' " But as the point stated was not involved in either Clark v. Neves, 76 S. C. 484, 57 S. E. 614, 12 L. R. A. (N. S.) 298, or Williams v. Gause, we must follow the actual adjudications rather than the dicta in these two cases.

Turning to the other relevant cases relied on to support the position that Good took a fee conditional, we think none of them decide the point involved, except Warnock v. Wightman, 1 Brev. 331, decided in 1804. In Danner v. Trescot, 5 Rich. Eq. 356, the devise was in trust for the use of S. P. during her life, and after her death to and for the right heirs of S. P., their heirs and assigns. The break in the succession of inheritance from the heirs of the body of S. P. to the general heirs of the heirs of the body was absent. In Miller v. Graham, 47 S. C. 288, 25 S. E. 165, a grant was to A. and the heirs of her body; habendum to her and the heirs of her body, to her and their heirs and assigns forever. The case is distinguished by the feature, noted by the court, that the general heirs of the first taker were put along with the heirs of the heirs of her body.

In Warnock v. Wightman, 1 Brev. 331, decided in 1804, a conveyance to "said E. W. and the heirs of the body of said E. W. and the survivors of them, their heirs and assigns forever," was held to convey a fee conditional. There was no reference to Archer's Case, and it was held, contrary to the later South Carolina cases cited, that the general word "heirs" must be construed to mean the same kind of heirs first mentioned, namely, heirs of the body. We think there is no escape from the conclusion that under the South Carolina authorities a grant or devise to A. for life, and at his death to the heirs of his body and their heirs, gives to A., not a fee conditional, but a life estate with remainder in fee to the heirs of his body as purchasers.

The Supreme Court of the United States has clearly so held. De Vaughn v. Hutchinson, 165 U. S. 566, 17 Sup. Ct. 461, 41 L. Ed. 827; Daniel v. Whartenby, 17 Wall. 639, 21 L. Ed. 661. And if there were doubt as to the South Carolina adjudications, that view of them should be taken by this court which accords with the decisions of the Supreme Court and the manifest intention of the parties. The conclusion we have reached was stated with convincing force in Ætna Life Ins. Co. v. Hoppins, 214 Fed. 928, 131 C. C. A. 224; Id., 249 Ill. 406, 94 N. E. 669.

The decree will be entered accordingly.

E. M. Blythe, of Greenville, S. C. (Martin & Blythe, of Greenville, S. C., on the brief), for appellant.

Ernest F. Cochran, of Anderson, S. C. (J. H. Heyward, of Greenville, S. C., on the brief), for appellees.

Before KNAPP, Circuit Judge, and SMITH and WATKINS, District Judges.

SMITH, District Judge. A bill in equity was filed by some of the appellees as complainants in the court below against the appellant E. M. Blythe and others as defendants for the partition and sale of the lands described in the complaint and the division of the proceeds thereof among the parties entitled according to their interests. The defendant E. M. Blythe filed an answer, setting up a title in himself in severalty to the larger part of the property sought to be partitioned, and by stipulation of counsel for all parties below the cause was to be heard upon the pleadings; the allegations of fact in the complaint and answers being taken as true.

The cause was heard in the court below upon the pleadings under this stipulation, and a decree rendered excluding the defendant E. M. Blythe from any title in severalty in fee, but allowing him a one thirty-sixth undivided interest in the part (23 acres) claimed by him, and directing the property to be sold for partition. From this decree the defendant E. M. Blythe has taken this appeal, and, his codefendants failing and refusing to join with him in the appeal, an order of severance has been made, and the defendant E. M. Blythe is the sole appellant before the court.

The facts are as follows:

On the 30th of March, 1887, one O. N. Good, for natural love and affection, executed a deed of conveyance whereby he granted and conveyed to his brother, Valentine G. Good, a tract of land described in the bill of complaint below, and in the deed, containing 34½ acres, more or less, reserving one-fourth of the annual crops therefrom to the comfort and support of his father, Henderson Good, during his natural life, with the following habendum:

"To have and to hold, all and singular, the said premises before mentioned, subject to the reservation and charges hereinbefore set forth, unto the said Valentine G. Good, for and during his natural life, and after his death to the heirs of his body, their heirs and assigns forever."

On the 26th of September, 1892, the said Valentine G. Good executed to his wife, Mrs. S. C. Good, a deed of conveyance, purporting to be a deed of conveyance in fee simple with warranty, conveying the entire 34½ acres, more or less. Later, viz. on the 19th of September, 1894, the said Mrs. S. C. Good executed and delivered to Mrs. Nannie J. Good a deed of conveyance, purporting to be a deed of conveyance in fee simple with warranty, of a part of the land, and also later, on April 20, 1899, Mrs. S. C. Good executed a deed of conveyance, purporting to be a deed of conveyance in fee simple with warranty, of the remainder of the land, containing about 23 acres, to one C. F. Dill, who later, on May 11, 1907, conveyed in fee simple the 23 acres to the appellant, E. M. Blythe.

The whole question in the case turns upon what estate the defendant Valentine G. Good took under the deed of gift from his brother to himself. If, under the deed, Valentine G. Good took a life estate, with remainders to the heirs of his body as purchasers, in the sense of chil-

dren, then the decree should be affirmed. If, however, under that deed he took a fee conditional—that is to say, a fee which became absolute upon the birth of issue, he then obtaining a fee simple absolute—his deed to his wife, Mrs. S. C. Good, conveyed a good estate in fee simple, and the appellant, E. M. Blythe, who derives his title thereunder, is entitled to the land thereby conveyed to him, and the decree should be reversed, so far as E. M. Blythe is concerned.

In considering the deed, it is to be noted, first, that the general atmosphere of the deed is that of a provision by one brother for his father and his brother and his brother's children. The deed is, on the face of it, for natural love and affection, and is a donation. While giving by the habendum a life estate in express terms to his brother, Valentine G. Good, the deed, taken as a whole, reserves a life estate, certainly as to one-fourth of the annual crops or the income therefrom, to the support of the grantor's father, Henderson Good, for his natural life. This charge or reservation in favor of his father, Henderson Good, would continue until the death of Henderson Good, whether he survived his son, Valentine G. Good, or not. Subject to this reservation and charge, the estate is conveyed to Valentine G. Good, for and during his natural life, and after his death to the heirs of his body, *their* heirs and assigns, forever.

Did Valentine G. Good take an estate in fee conditional under the language of this deed? If he did, it was by virtue of the rule in Shelly's Case, as applied, construed, and enforced in the state of South Carolina, and the inference must be, from the language of this deed, that it gave to Valentine G. Good an estate in freehold for life, with a limitation by way of remainder to his heirs generally or the heirs of his body. In that case, Valentine G. Good would be in as of an estate in fee conditional, and upon the birth of issue, under the law of South Carolina, if he held the land under a fee conditional, the estate in him would have become absolute.

[1] The rule in Shelley's Case is adjudged in the state of South Carolina to be a wise and salutary rule, one to be enforced in all cases in which it is applicable. The rule is generally supposed to have had its origin in the application of a policy of law; the policy of the law being to favor descents as much as possible, from which arose the aversion that the common law is said to have had to the inheritance being in abeyance. The rule was also supposed to have been adopted, and has been enforced on the theory of facilitating the vesting of the inheritance without uncertainty, and thereby facilitating the alienation of land, and preventing its being, as it were, locked up by indefinite limitations, depending upon the uncertain birth or failure of issue.

Inasmuch, however, as the rule gave to technical words a technical and fixed construction, conflicts arose when it would appear, upon the face of the deed or will, that the technical wording leading to a fixed construction was really an arbitrary or artificial construction, as frequently to interfere with what appeared to be the expressed intention of the grantor or testator. From thence followed a leaning of courts away from the rule, upon the supposition that it too frequently interfered with the giving effect to the real intention of the grantor or

testator; and from the supposition that this was too often the effect of the artificial construction given to instruments under the rule in Shelley's Case, that rule has fallen, as it were, into disrepute, as being one that operated to defeat the intention of a testator.

The consequence has been that in some states of the American Union the rule has been abolished, and generally in others the trend of the adjudicated cases has been to lay hold of anything in the language used which would allow the court to abstain from the enforcement of the rule, and give effect to what appeared to the court to be the real intent of the grantor or testator upon the face of the deed or will.

[2] It is not to be denied that the large number of cases in the courts of South Carolina, more or less dealing with the application of the rule in Shelley's Case, appear to be hard to reconcile. The general effect of those decisions, however, is that the courts in South Carolina will not give effect to the rule in Shelley's Case, unless it is strictly a case in which the language is directly within the purview of the rule. Wherever, according to the decisions in South Carolina, it appears on the face of the instrument that the words "heirs," or "heirs of the body," or "issue," or such words of inheritance, are limited or qualified by additional words varying or contradicting the construction necessarily placed upon those words by the application of the rule in Shelley's Case, then the rule will not be applied, and the court will lay hold of the varied language of the instrument, to give effect to what it finds on the face of the instrument to have been the true intent of the grantor or testator.

If a grant were to A. for life, and after his death to his heirs, or the heirs of his body, under the language of the decisions in the courts of South Carolina, the rule in Shelley's Case would apply. If, however, there is any variation from this language, the court has held itself open to avail itself of the variation to give effect to what upon the face of the deed or will appears to be the intent of the testator.

[3] It is to be observed, also, in the instant case, that, if the effect upon the face of the instrument of the reservation in favor of the father of the grantor for life of one-fourth of the products of the property was to vest in him an undivided interest in the same for life as a freehold undivided interest, the rule would not apply. In the case of Shaw v. Robinson, 42 S. C. 342, 20 S. E. 161, it is expressly decided by the Supreme Court of South Carolina that, for the rule to apply, subsequent limitations to the heirs must be to the heirs of the ancestor who takes the particular estate, and that where the prior estate is limited to more than one, with remainder to the heirs of the body of one, the limitation over would be a remainder, and the rule would not operate, and the heirs of that one would take as purchasers.

The reason of this is apparent: If the grant be to A. and B. for their joint and several lives, and after the death of the survivor to the heirs of the body of A., then, in case A. had issue, what became of the estate of B? So in the instant case: If, on the birth of issue, the estate to Valentine G. Good became one absolute in fee simple, then the provision for Henderson Good would have been nullified. It would

not appear to be an answer to this to say that on the birth of issue to Valentine G. Good he took an estate in fee simple, subject to a charge in the nature of a lien in favor of Henderson Good, for his life, for the object of the rule in Shelley's Case was to avoid just such postponements of the absolute vesting and consequent deferring of the facility for alienation.

[4] Assuming, however, for the sake of the argument, that the effect of this reservation to Henderson Good was not to make a prior life estate to two persons, to wit, Valentine G. Good and Henderson Good, but to make it a life estate for Valentine G. Good alone, subject only to the charge to Henderson Good, it would still appear upon the face of the deed that the intention of the grantor was not that the limitation over should be one which inured to the benefit of his brother, Valentine G. Good. It appears upon the face of the deed that the conveyance was a donation made by O. N. Good for the benefit of his brother and of his father and of his brother's children, and *their* heirs and *assigns*; and to give the deed, therefore, the effect of a deed in fee simple vesting in Valentine G. Good upon the birth of issue, would be to defeat the provision from the annual crops for the support of his father, Henderson Good, as well as any provision intended for the nephews or nieces of the grantor who might be children of his brother.

To the ordinary mind the very express declaration—as in the instant case—that the grant was for life, would in itself convey the inference that that was all that it was intended to bestow, and nothing but the artificial construction given by the rule of law to that grant, when followed by words of limitation to heirs or heirs of the body, would induce an inference that a larger estate than one for life was given. In the opinion of the court, under the language of the deed in the present case, where the grant is to A. for life, with a reservation to B. for B.'s life of one-fourth of the product of the estate, and a limitation after the death of A. to the heirs of his body, their heirs and assigns, forever, the rule in Shelley's Case is not, under the laws of South Carolina, applicable, but that the heirs of the body of A. take a remainder in fee as purchasers.

There have been a number of cases in the state courts of South Carolina upon the application of the rule in Shelley's Case. These are stated in full in the printed arguments of counsel, and were well commented on at the time of the hearing in this court, and have been carefully compared and considered. To go over them all at any length in this opinion would not be profitable, in view of the fully reasoned opinion of the learned judge who delivered the opinion and decree below. This court concurs with the learned judge below that the instant case is controlled by the principles laid down in McIntyre v. McIntyre, 16 S. C. 290, recognized and reaffirmed in Williams v. Gause, 83 S. C. 265, 65 S. E. 241, and Adams v. Verner, 102 S. C. 17, 86 S. E. 211.

The decree below is accordingly affirmed.

Affirmed.