# CHARLESTON.

BEHRENS *et als v.* BAUMANN, *Adm'r.*

Submitted January 26, 1909. Decided October 26, 1909.

1. WILLS—*Construction—Intent.*

   In the interpretation of a will the dominant or primary intention, gathered from the whole thereof and all its provisions, must be allowed to control, when all the clauses can be harmonized with it. (p. 59.)

2. SAME—*Construction—Intent—General and Special.*

Though a clause or provision in a will, clearly expressing a particular or special intent, will prevail over such general intent, doubtful expressions, merely susceptible of a meaning inconsistent therewith, will not do so.   (pp. 59, 60.)

3. SAME—*Estates Created—Life Estate or Fee Simple.*

A life estate in all of the testator's property, real and personal, given to his wife, who is charged with the administration of the estate for the benefit of herself and the other beneficiaries named in the will, is not enlarged into a fee simple estate in either the real or personal property, by the following phrase, describing the property to go over:  "Whatsoever what may be left."  (p. 59.)

4. SAME—*Estates Created—Defeasible or Absolute Fee Simple— "Then the Estate Left Over."*

Nor, in such case, is a fee simple estate in remainder, defeasible by the death of the devisee without leaving a child or children surviving him, enlarged into an absolute estate in fee simple, by the insertion after the naming of the event, the happening of which shall divest the estate, of the phrase, "then the estate left over."  (p. 60.)

5. SAME—*Construction—Indefinite Expressions.*

Such indefinite expressions cannot be allowed the widest signification of which they are capable, if, when so read, they conflict with the general intent expressed.  (p. 61.)

6. SAME—*Construction—Transposition.*

In no case, when the words of a will are plain and unequivocal, is a transposition to be made that will create a meaning different from that which they naturally had as written.  (p. 61.)

7. REMAINDERS—*Personal Property.*

Personal property, as well as real estate, is a subject of executory interests and limitations.  (p. 61.)

Appeal from Circuit Court, Ohio County.

Suit by Ricka Behrens and others against William N. Baumann, administrator with the will annexed, of Frederick Hanke, deceased, and others.   Decree for plaintiffs, and defendants appeal.

*Affirmed.*

*Jno. J. Coniff* and *Geo. J. Rogers,* for appellants.

*C. E. Morris* and *Erskine & Allison,* for appellees.

POFFENBARGER, JUDGE:

The interpretation of the will of Frederick Hanke is the only matter involved in this cause, and the question is whether Raymond Hanke, grandson of the testator, took an absolute, or a defeasible, fee simple estate in remainder.

By the second clause of the will, Hanke gave to his wife all of his estate, real and personal, "for her own use during her natural life." By the third clause, he requested her "to administer all the estate for the benefit of herself and the heirs" in the will afterwards mentioned. By the fourth clause, he provided that his grandson, Raymond Hanke, should "have everything, real or personal whatsoever what may be left;" and then as follows: If the said Raymond Hanke "should pass away, without leaving any child or children of his own, *than* (then) the estate left over shall be divided in equal shares between the first cousins of my widow Mrs. Fredericka Theresa Hanke, said cousins residing in Europe and Ricka Beherns, Frederick Tofaute, Lizzie Goehmann, Hannah Kasten, & Lina Schneider residing in this country." The wife died before the testator, and the life estate therefore lapsed. The testator died in 1901. Raymond Hanke, the grandson, died on May 30, 1906, at the age of twenty years, without issue. Assuming absolute title in himself, and capacity to dispose of the property, he made a will, purporting to give all the estate he had, other than that left him by his mother, to Sophia Hanke, William W. Schambra and William N. Baumann. Thus he attempted to dispose of the Frederick Hanke estate. The executrix named in the will of Frederick Hanke, his wife, having died before the will was probated, William N. Baumann was appointed administrator with the will annexed, and the estate passed into his hands as such. He was also the guardian of Raymond Hanke and transferred it to himself as such. This suit was brought by the beneficiaries named in the fourth clause of Hanke's will, except the cousins residing in Europe, who are unknown, and the court, being of the opinion that Raymond Hanke took a defeasible estate in fee simple, decreed title to the whole estate in the plaintiffs and the said European cousins, if any there are, and the right of possession of the real estate. Pending the suit, a receiver had been appointed, who had collected rents

from the real estate, and the decree directed him to pay the same over to the plaintiffs, to be held by them as tenants in common for themselves and their co-tenants, if any there are. Being of the opinion that the personal estate should not be distributed until an inquiry shall have been made as to the existence and identity of the supposed European cousins, and the condition of the estate, the court referred the cause to a commissioner for a settlement of the accounts of Baumann, administrator, and an inquiry as to what estate Frederick Hanke died seized and possessed of, and all matters necessary to a full settlement and distribution of the same.

As the life estate given Fredericka Theresa Hanke lapsed by her death, antedating that of the testator, counsel for both appellants and appellees seem to be of the opinion that no inquiry as to what estate she would have taken, had she survived, is necessary. In this view, they may be correct, but, anticipating the possible suggestion that she would have taken, not merely a life estate in the personal property, but absolute title to it, and the will containing no residuary clause, the testator might be deemed to have died intestate, we have examined the provisions of the second, third and fourth clauses, respecting the estate intended for her, and concluded that it was a life estate only. No power of disposition or consumption is expressly given to her. In express terms, her estate is defined as one for life, and she is required to administer the whole estate for the benefit of herself, Raymond Hanke, the grandson, and the other beneficiaries mentioned in the fourth clause, taking in the event of the death of the grandson without issue. We, therefore, construe the words "whatsoever what may be left," not as giving to her, by implication, a right of consumption and disposition, but as merely indicating intention to give what should remain after the payment of debts and funeral expenses and the consumption of such portion of the estate as a life tenant could rightfully consume. That such a tenant is not required to account for such things as are consumable in the use thereof is well settled. *Bartlett* v. *Patton,* 33 W. Va. 71. The dominant intent, ascertained from an examination of the entire will and consideration of all of its provisions, must prevail. *Morgan* v. *Morgan,* 60 W. Va. 327. As to what that intention was, there can be no doubt. The wife was to take, in the first instance, then

the grandson, and, in lieu of him, if he died without living children, the other persons, named in the fourth clause, unless, in some other way, or by some other provision, a different intention is manifested. The intention shown by the words "whatsoever what may be left" must be subordinated to the general or dominant intent, but they cannot be wholly ignored. Some function must be assigned to them. That has been done by making them define or describe the property intended to go to the remaindermen, and therefore, it does not necessarily imply a right of disposition in the life tenant. We are not to be understood as saying a right of consumption or disposition, if given, would have enlarged the life estate into a fee simple. As to that, there is much conflict of authority. It suffices here to say no such right was given.

The gift in remainder to Raymond Hanke is in general terms. There is no limitation upon it except the provision in favor of other persons, in case he should die without leaving any child or children of his own. It was intended that he should take a fee simple estate, not a life estate, in all the property, both real and personal, but if he should die without issue, then that estate should go to other persons named, unless the clause "than (then) the estate left over" implies that he should have a power of disposition. If such intent is expressed, he took an estate in fee simple absolute, for it is well settled that a gift in general terms, coupled with an unlimited right of disposition, vests an absolute fee simple estate, and any other subsequent clause in the will attempting to make a different disposition of it, or purporting to give any right inconsistent therewith, is repugnant, inoperative and void. For these propositions, there is an abundance of authority. *Milhollen's Adm'r.* v. *Rice,* 13 W. Va. 510; *Morgan* v. *Morgan,* 60 W. Va. 327; *Wilmoth* v. *Wilmoth,* 34 W. Va. 326; *Livingston* v. *Robins,* 16 Johns. 588; *Roberts* v. *Roberts,* 1 L. R. A. (N. S.) 782, case note; *Howard* v. *Carusi,* 109 U. S. 725; *State* v. *Smith,* 52 Conn. 557. Obviously, therefore, the whole case turns on the meaning of the words "then the estate left over." To what do they refer? Counsel for the appellees say the reference is to the property intended to go into the hands of Raymond Hanke. Counsel for the appellants say it is to the property remaining at the death of Raymond Hanke. We are of the

opinion that the former are right. The language contemplates an antecedent, something fixed and definite. It says "the estate left over," and so describes the estate given to Raymond Hanke, what was left, in the sense above determined, at the death of the life tenant, for only that and the precedent life estate had been created. The definite article "the" is used, and the reference is to an estate, not articles, previously created and conditionally given to Raymond Hanke. The word "then" is not used in the chronological, but the sequential sense. It means the same as the words "in that case" or "in that event." We cannot transpose and place it before the word "left," as suggested in the argument, because it would wholly change its meaning, and make it conflict with the general intention expressed. "In no case, where the words are plain and unequivocal, is a transposition to be made in order to create a meaning and construction different from that which they naturally had as written." *Graham* v. *Graham*, 23 W. Va. 36. If there were a doubt about this, the rule, requiring the prevalence of the general intent expressed in the will, would necessarily resolve it in favor of the appellees. If we leave these words entirely out, it is plain that the testator intended the persons, last named in the fourth clause, to take the estate, in the event of the death of the grandson without issue. If he inserted them, intending thereby to give the grandson right of disposition, such persons could not take, although he expressed a desire that they should. A particular intent, defeating a general one, ought to be plain, and, if it arises by implication only, it must be so plain that the contrary thereof cannot be supposed. In other words, it must be a necessary implication. A particular intent always prevails over a general one, *Waring* v. *Bosher*, 91 Va. 286; but it must be clearly expressed. Redfield on Wills, 434; Schouler on Wills, sec. 468. A clearly expressed intention in one part of a will does not yield to a doubtful construction in another part. *Bartlett* v. *Patton*, 33 W. Va. 71, 80; *Martin* v. *Martin*, 52 W. Va. 381, 391; *Smith* v. *Schlegel*, 51 W. Va. 245, 249.

In resistance of this view, counsel for the appellants urge the inconvenience of keeping the personal estate intact to await the contingency on the happening of which it was to be divested and go to others. The record discloses none of the cir-

cumstances except those herein stated. The grandson was of tender years when the will was written, but as to his state of health, expectation of life and the probability of issue, it is silent. But if all these and other circumstances were disclosed, they could hardly outweigh the express terms used in the will, analyzed in obedience to the rules of interpretation.

Finally, supposed legal impossibility of the creation of an executory interest in personal property is invoked. This position is wholly untenable. *Griffith* v. *Thompson,* 1 Leigh 321, 329; *Poindexter* v. *Davis,* 6 Grat. 481, 502; 2 Min. Ins. 433, 435.

If there was any error in decreeing, to the appellees, the rents collected by the receiver, the appellants, having no interest in the same, are not prejudiced thereby and cannot complain of it. *Ruhl* v. *Nestor,* 52 W. Va. 613; *Webb* v. *Bailey,* 41 W. Va. 463; *Reed* v. *Nixon,* 36 W. Va. 681.

Seeing no error in the decrees complained of, we affirm them, and remand the cause for further proceedings.

*Affirmed.*