13292

BETHEA v. YOUNG

(161 S. E., 514)

360

*Messrs. R. W. Wade, D. W. Robinson, Jr.* and *D. W. Robinson,* for appellant,

*Messrs. O. L. Long* and *W. B. McGowan,* for respondent,

December 8, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The facts and issues involved in this case, necessary for an understanding of the case are fully stated in the report of the special referee, Hon. A. C. Todd, to whom the case was referred to take the testimony and report his findings of fact and conclusions of law, with leave to report any special matters. On exceptions to the referee's report, the case was heard by his Honor, Judge C. C. Featherstone, who confirmed the report of the referee, except as to minor matters which, by consent of the counsel, were modified.

We agree with the holding of the Circuit Court, except as to the interest Mrs. Young, wife of the testator, took in house and lot referred to as the brick house property, and, also, as to the application that should be made of the item of $2,100 paid to Mrs. Young by the executor. In our opinion, under the codicil to the will in question, Mrs. Young took only a life estate in the brick house property. It is, further, our opinion that the said item of $2,100 should be charged as an advancement on the interest of Mrs. Young in said estate.

It is, therefore, the judgment of this Court that the judgment of the Circuit Court be modified in accordance with the views herein expressed and affirmed in every other respect.

Mr. Chief Justice Blease and Messrs. Justices Stabler and Bonham concur.

Mr. Justice Cothran (concurring and dissenting): The primary purpose of this action is to determine the interest which Mrs. Young, the widow of George W. Young, was entitled to under the will of her husband; and, secondarily, to determine the interest which the plaintiff, Mrs. Bethea, the sister and practically the sole devisee and legatee under the will of Mrs. Young, is entitled to.

The testator, George W. Young, died on April 15, 1927, leaving of force a will, dated November 12, 1915, and a codicil, dated April 14, 1923; both instruments were duly admitted to probate in common form on April 22, 1927. Mrs. Young and a brother of the testator, John H. Young, were appointed executrix and executor of the will. They promptly qualified. The testator and his wife had had no children.

Mrs. Young became ill in July, 1927, following the death of Mr. Young, and was totally helpless from that time until her death in March, 1928.

In September, 1927, Mrs. Bethea was appointed committee of Mrs. Young, and continued to act as such until the death of Mrs. Young. At the date of this appointment, Mrs. Young, by order of the Court of Probate, was relieved of any further duties as executrix, all of which devolved upon the executor, John H. Young.

Mrs. Young made a will, dated April 26, 1927, making her only sister, Mrs. Bethea, practically her sole devisee and legatee, and appointing her executrix of the will. The will was duly admitted to probate, and Mrs. Bethea qualified as executrix.

This action was commenced on......day of......192.. (the date not stated in the record), against John H. Young individually and as executor, as attorney in fact for devisees and legatees under the will to sell the real estate of the testator, and as special agent to operate the farming interests

of the estate and collect the rents therefrom, and the brothers and sisters and nephews and nieces of the testator, children of the pre-deceased brothers and sisters. The plaintiff sought a distribution of the proceeds of the sale of the real estate; for an accounting by the defendant, John H. Young, as special agent; for an accounting generally by him as executor of the proceeds of the sale of the personal estate and income therefrom; for a judgment against the said executor for interest on an amount equal to the cash, choses in action, personal property, live stock, and agricultural implements, which were bearing interest at the time of the testator's death or which should have been invested by the executor; for judgment against John H. Young as attorney in fact for $4,616.67 and interest, being one-third of the proceeds of sale of the brick house sold by him November 7, 1928; for judgment against him for $6,819.63 and balance of one-third interest in the real estate sold by him; for judgment for $1,745.23, one-third of the rents for the year 1928; for judgment for one-third interest in the proceeds of sale of all remaining assets, real and personal, of the estate; and for a general accounting and final settlement of the estate.

The defendants filed answers contesting the several demands made by the plaintiff, and joined in the prayer for an interpretation and construction of the will and codicil; for the acertainment and determination of the rights and interests of all parties; and for instructions and advice as to the disposition of certain of the assets of the estate; and for final settlement and discharge.

The case was referred to A. C. Todd, Esq., as special referee, by an order, the date of which does not appear, referring all issues of law and fact; he filed an elaborate report finding in favor of the plaintiff upon the principal issues raised. The matter then came before his Honor, Judge Featherstone, upon exceptions to the referee's report; he filed a decree, dated September 5, 1930, confirming the report except in minor modifications. From this decree the de-

fendants have appealed upon exceptions which raise only three questions:

(1) Should the payment of $2,100.00 by the executor to Mrs. Bethea as committee of Mrs. Young, on November 14, 1927, have been charged to the corpus of the estate and not considered as an advancement to Mrs. Young on account of her interest under the will?

(2) Should Mrs. Young have been adjudged entitled to an interest of one-third in the proceeds of the sale of the brick house upon the termination of her life estate devised to her therein under the will?

(3) Should Mrs. Young have been adjudged entitled to an interest of one-third in the corpus of the personal estate after she had received the income therefrom bequeathed to her under the will?

I. Should the payment of $2,100 by the executor to Mrs. Bethea as committee of Mrs. Young, on November 14, 1927, have been charged to the corpus of the estate and not considered as an advancement to Mrs. Young on account of her interest under the will?

After Mrs. Bethea had been appointed committee of Mrs. Young, the executor, John H. Young, made two payments in cash to her, the one of $1,400 on October 5, 1927, and the other of $2,100 on November 14, 1927. The first payment was upon a receipt signed by Mrs. Bethea, as committee, which stated that it was received "as advancement upon the interest of Iva Curtis Young (Mrs. Young) under the will of George W. Young"; the other upon a plain receipt, simply stating that it was "for Iva Curtis Young"— neither indicated a payment for her "support and comfortable care" under paragraph 7 of the will or for "her support and comfort" under paragraph 6 of the codicil.

The referee held that the $1,400 payment was not a payment under either of those paragraphs, and should be debited against the account of Mrs. Young, and necessarily of Mrs. Bethea; but that the $2,100 payment was, and should be

credited upon that account. I think that he was right as to the $1,400 payment but wrong as to the $2,100. The only difference between the two payments, assigned by the referee, was the statement in the $1,400 receipt that the payment was "received as advancement on the interest" of Mrs. Young under the will, while the $2,100 receipt did not contain that statement. Referring to the $2,100 payment, the referee states: "The circumstances would indicate that the parties really considered this as a payment under that provision of the will which authorized the executor to make an advance out of the corpus of the personal estate for the care and comfort of Mrs. Young whenever in his sound judgment and discretion he should deem it necessary and advisable. I hold as a matter of fact that the sum of $2,100 was so paid and should be charged against the corpus of the personal estate."

Certainly there is nothing in the testimony of Mr. Young, the executor, for charging either payment to other than the share (interest) which Mrs. Young had coming to her from the estate of her husband under his will.

The word "interest" had no technical meaning in the first receipt; it was used in the same sense as "share."

The omission of the word and of the clause in the later receipt could have no bearing, the law would have supplied—implied—as much in either case.

But turning to the will, Paragraph 7, last sentence, which was revoked, and the codicil VI, the substitute therefor, we find that the corpus is to be invaded by payment from the principal "if they (here the sole executor, John H. Young) deem it necessary and advisable." Clearly the discretion, the choice, was placed with the executor in whose judgment the testator manifested so much confidence throughout his will and codicil.

Where and how has the executor exercised his discretion? How has he shown a decision to invade the principal or corpus in making either of the payments? His position before

the referee and here is exactly the contrary of such choice. What authority is to be found in the will and codicil, and certainly that is the chart and compass in this regard, for substituting the judgment and/or discretion of the referee and of the Court for that of the person named by the testator? Is not the attempt to do so in effect the substitution of the will of the Court (making the will) for that of the testator, the very thing condemned by the referee in his quotation from *MacDonald v. Fagan?*

If the plaintiff says "interest" in the first receipt was used in the technical sense, we are adding nothing to the strength or soundness of her argument, for there is no evidence that any interest—income—had accrued at that time. We are certain that only a fraction of the October payment was net income for the entire eleven months after the death of Mr. Young and up to the death of Mrs. Young.

If we say it is an advance on what is to accrue thereafter, then why not apply the same rule to both, and why is it not more consonant with the plain meaning of words, and the dictates of common sense and the response of the generous kindly instincts of humanity (which are shown by all the evidence to have actuated and controlled the executor in dealing with his brother's widow) to say that both were advances against her share—the share which would soon be due her from the estate and amply sufficient to meet it.

She was ill. He knew it. She had ample money in the bank, but it was drawing interest. She was in no condition to act, mentally, and it might have required some legal proceedings to draw it out. The estate had funds on hand, probably not bearing interest, and a large part of the real estate, or its value, would be coming to her certainly at the end of the year. Without stopping to quibble on technicalities of law or phrases, he responded to the generous impulses of that which was best in him. Shall such act be turned to his detriment? *Stamper v. Stamper,* 121 N. C., 251, 28 S. E., 20-22.

And for whose benefit is this afterthought of construction sought? An entire stranger in blood to the testator.

II. Should Mrs. Young have been adjudged entitled to an interest of one-third in the proceeds of the sale of the brick house upon the termination of her life estate devised to her therein under the will?

I agree with the conclusion of the referee that, as a general rule, a devise of an interest in the remainder of a fee-simple estate, upon the expiration of a life estate is not necessarily inconsistent with a devise of the life estate. If it should clearly appear that the testator intended that, in addition to the devise of the life estate, the life tenant should also have an interest in the fee-simple estate in remainder, such interest, vesting at the time of the creation of the life estate, though the right of possession be postponed, will be protected, and, in the meantime, be susceptible of alienation, incumbrance, devise, or descent. The remainder is the fee-simple estate from which the particular estate, the life estate, has been carved, and takes effect in possession upon the expiration of the life estate. The title to the fee-simple estate, the possession of which is thus postponed, must vest, at the moment of the testator's death, in some one during that interval; that is, in the person intended by the testator to acquire it in possession upon the expiration of the life estate. The fact that the person vested with an interest in the fee may never come into possession of that interest which can take effect only upon his death does not at all affect the vesting of his title, susceptible to all of the incidents of property generally except possession.

By agreement of all parties interested, and I believe by order of Court, the entire real estate of the testator was sold by the executor, John H. Young, in November, 1928; the sale included the brick house which brought $14,000. In a partial settlement then had, the proceeds of the sale of the brick house were retained by the executor on account of the controversy as to Mrs. Young's interest therein. From

the gross sales were deducted the $14,000 and certain expenses, leaving for distribution, as the referee reports, $94,-024.53, one-third of which $31,340.38 ($31,341.51?), was paid by the executor to Mrs. Bethea. This was after the death of Mrs. Young which occurred in March, 1928.

This appears to be the main point of attrition between the parties to this appeal: Whether it should have been adjudged that under the terms of the will Mrs. Young was entitled not only to a life estate in the brick house, but to an interest, one-third, in the fee-simple remainder.

(a) *By Section 5 of the will, the testator had devised to Mrs. Young, a life-estate in all of his real estate, with the privilege of disposing of certain described parcels by will.*

(b) By Section 6, he had bequeathed to her the household and kitchen furniture, effects, plate, pictures and books.

(c) By Section 7 (next to last paragraph), he bequeathed to her the income from his personal estate, directed to be invested by the executors under the first part of Section 7.

(d) *By Section 7 (last paragraph), he had provided for her to draw upon the principal of his personal estate as much as $500 per annum for her "support and comfortable care," should the executors deem it necesary to do so.*

(e) *By Section 8, he gave her the right to dispose by will of $10,000 of the principal of his personal estate directed to be invested by the executors under the first part of Section 7.*

I have italicized the items above which were revoked by the codicil, (a), (d) and (e); (b) and (c), were not interfered with.

Section 3 of the codicil provides: "In lieu of the provisions made for my wife, Iva Young, in my aforesaid will and by this codicil revoked, I give, bequeath and devise unto my said wife in lieu and bar of dower, our old home on Broad Street in Clinton, next and adjoining the place where we now live, to be hers in fee simple; and I further devise

and bequeath unto my said wife our home where we now live for the term of her natural life."

The solution of this question turns upon the construction of paragraph 11 of the will, in connection with Paragraph 4 of the codicil.

Paragraph 11 of the will is: "All the property of whatsoever kind or nature in hand at the death * * * of my wife and not· otherwise disposed of by me * * * I give, bequeath and devise unto my brothers and sisters * * * ."

Paragraph 4 of the codicil is: "I give, bequeath and devise unto my beloved wife, Iva Young, after the bequests and devises unto her hereinabove made in this codicil, and after the payment of the devises, bequests and debts as provided in Items, One, Two, Three, Four, Five and Six of my aforesaid will not by this codicil revoked, one-third of the remainder of my estate of whatever kind, to be hers absolutely and forever."·

While it is true, as stated above, that the devise of an interest in the remainder of a fee-simple estate, upon the expiration of a life estate, is not necessarily inconsistent with a devise of a life estate, it is clear that, where the terms of the will do not imperatively demand that both a life estate and an interest in the remainder, were intended to be devised, it is a strong circumstance tending to the conclusion that the devise of the life-estate was intended to be exclusive.

Another strong circumstance tending to this conclusion, is that Section 11 of the will would seriously be impaired by a contrary conclusion. This section is not referred to in the codicil except impliedly in Section ·8: "Except as revoked or modified by this codicil, it is my will and desire that my aforesaid will stand and be carried out as written."

Note the generality of the expression in Section 11 of the codicil: "All the property of whatsoever kind or nature in hand at the death * * * of my wife and not otherwise disposed of by me * * * I give, bequeath and devise unto my brothers and sisters * * * ."

This section is not "revoked or modified by this codicil," and the "desire" of the testator that it should be carried out as written should be respected.

It is significant that there is not an expression in the will that lends support to the plaintiff's contention; it would have been so easy for the testator to have set the matter at rest by a simple provision. There can be no question but that the remainder in fee at the expiration of the life estate, was "in hand" at the time of the death of the life tenant. It is equally clear that it was not disposed of by the codicil, and that it must go under the terms of Section 11 to the brothers and sisters.

Standing alone, unaffected by Section 4 of the codicil, the residuary clause, Section 11, created a valid devise to the brothers and sisters, and, under the well-established rule, it cannot be cut down by a subsequent clause or even by a codicil unless this intention plainly appears in the codicil.

In *Adams v. Verner,* 102 S. C., 11, 86 S. E., 211, 212, it is said: "On the other hand, one of the soundest rules of construction, founded by the sages of the law, the wisdom of which has been approved by succeeding generations as affording security and certainty to estates, is that, where an estate or interest is given in words of clear and ascertained legal signification, it shall not be enlarged, cut down, or destroyed by superadded words in the same or subsequent clauses, unless they raise an irresistible inference that such was the intention. The rule is thus stated in *Carr v. Porter,* 1 McCord, Eq., 61: 'An estate may be enlarged, controlled, and even destroyed by implication; but the principle must be taken subject to certain other well established rules, as that, where an instrument is reduced to writing, nothing is to be implied which does not arise from the face of the writing. An estate by implication cannot be raised in direct contradiction to and denial of an express estate. An estate by implication can only arise by a necessary implication, and the necessity must appear on the face of the will. Such im-

plication is inadmissible where the provisions of the will can otherwise be carried into effect.' "

And again at page 13 of 102 S. C., 86 S. E., 211, 213: "Having given such an estate in clear and unequivocal terms, and the super-added words being of doubtful import, they must be rejected, as a mere pleonasm. That which is of doubtful inference must yield to that which is certain."

See, also, *Monk v. Geddes,* 159 S. C., 88, 156 S. E., 175; *Lawrence v. Burnett,* 109 S. C., 419, 96 S. E., 144; *Burriss v. Burriss,* 104 S. C., 441, 89 S. E., 405; *Cayce Land Co. v. Guignard,* 124 S. C., 450, 117 S. E., 644; *Strother v. Folk,* 123 S. C., 135, 115 S. E., 605; *Shealy v. Shealy,* 120 S. C., 280, 113 S. E., 131; *Glenn v. Jamison,* 48 S. C., 316, 26 S. E., 677; *Cureton v. Little,* 119 S. C., 36, 111 S. E., 803; *Jenkins v. Talbert,* 77 S. C., 458, 58 S. E., 420; *Howze v. Barber,* 29 S. C., 470, 7 S. E., 817; *Smith v. Smith,* 93 S. C., 215, 76 S. E., 468.

It is proposed to enlarge the life estate in the brick house, devised to Mrs. Young, into an undivided one-third interest therein, in fee, in the absence of anything in the will, or the codicil, evidencing an intention on the part of the testator to do so.

In Page on Wills, § 982, it is said: "If the estate which is given is clearly a life estate, it will not be altered by general words which are apparently inconsistent therewith. It will not be enlarged by words which are less clear than those by which it was given; nor will it be altered by other gifts which pass some other estate in other property. If other provisions of the will show clearly that a fee is intended, full effect will be given thereto."

In Thompson on Const. of Wills, § 450, it is said: "So, where the will expressly grants a life estate to the first taker, it cannot be enlarged into a fee by subsequent language short of plain and explicit terms. Thus an express life estate has been held not enlarged into a fee by the use of the phrase 'whatever may be left' in describing the property to go over."

In Alexander on Wills, § 966, it is said: "Neither will a gift over of 'what may remain' enlarge the life estate by implication. Nor will the absence of a gift over imply a gift of a larger estate where the devise is clearly for life."

In *Thomson v. Ehrlich*, 148 S. C., 330, 146 S. E., 149, 151, the following from *Bilderback v. Boyce*, 14 S. C., 528, was quoted with approval, referring to the use of the words "whatever and wherever" situated: "These words mean that the testator does not intend to die intestate as to any part of his estate, and they generally mean nothing more."

In *Behrens v. Baumann*, 66 W. Va., 56, 66 S. E., 5, 27 L. R. ·A. (N. S.), 1092, the Court held, quoting syllabus:

"A life estate in all of the testator's property, real and personal, given to his wife, who is charged with the administration of the estate for the benefit of herself and the other beneficiaries named in the will, is not enlarged into a fee-simple estate in either the real or personal property by the following phrase, describing the property to go over: 'whatsoever what may be left.' "

"Such indefinite expressions cannot be allowed the widest signification of which they are capable, if, when so read, they conflict with the general intent expressed."

In *Hicks v. Connor*, 210 Ky., 773, 276 S. W., 844, 845, the Court said: "Where a life-estate has been expressly created, no subsequent language, short of plain or explicit terms, will be deemed to have enlarged the estate." (Citing cases.)

In *Wiggins v. Perry* (Mo. Sup.), 271 S. W., 815, an exceedingly interesting discussion of the point, it was held, quoting syllabus: "Where testator, by clearly expressed intention devised his property in trust for daughters during their natural lives, with remainder over to their heirs, such intent will not be defeated by a later and ambiguous clause, which may be construed as disclosing intent to give daughters absolute fee."

In *Trustees Presbyterian Church, Somerset v. Mize*, 181

Ky., 567, 205 S. W., 674, 2 A. L. R., 1237, it was held that life estate expressly created by will, will not be enlarged by subsequent language unless expressly enlarged..

In *Kimbrough v. Smith,* 128 Ga., 680, 58 S. E., 23, it was held, quoting syllabus: "A devise of a life estate, made in distinct terms in a prior item, will not be enlarged into a fee-simple estate by the general language of a subsequent item, where the language and the general context of the will do not clearly and plainly indicate such to be the testator's purpose and intent."

The plaintiff's contention, of course, is that Section 4 of the codicil has the effect of creating a devise of a third interest in fee in the brick house; it certainly does not do so expressly, and to do so impliedly it must appear beyond question that such was the intention of the testator. That it was not appears clearly from the fact that he devised to her a life estate and said nothing about the fee, that he clearly devised the fee in all of his real estate, undisposed of by his will, to his brothers and sisters, and that he distinctly reaffirmed the provisions of Section 11 by the eighth section of the codicil.

The office of a codicil is clearly defined. A codicil is at least an implied republication and confirmation of the will up to and at the time of the execution of the codicil. 1 Schouler on Wills, Executors & Administrators (6th Ed.), § 677; (5th Ed.), §§ 447, 448; 51 A. L. R., note, and cases cited, pages 692-694; Thompson on Const. of Wills (1928), § 29, § 97, at page 193; 1 Page on Wills (2d Ed.), § 509; 1 Alexander on Wills, § 28; Gardner on Wills (2d Ed.), page 263; *Dent v. Dent,* 113 S. C., 423, 102 S. E., 715; *Dunlap v. Dunlap,* 4 Desaus., 321, 322; *Lawrence v. Burnett,* 109 S. C., 421, 96 S. E., 144; 2 Schouler on Wills, Exrs. & Admrx. (6th Ed.), § 846; *Des Portes v. Des Portes,* 157 S. C., 414-418, 154 S. E., 426, 429.

In the instant case the codicil not only purports to be an amendment to the will, but by paragraph 8, which is the last

paragraph thereof, expressly confirms and approves the will and directs that it be carried out, "except as revoked or modified by this codicil."

The codicil should be construed with the will if possible and unless plainly inconsistent and as one whole. And the determination expressed in the codicil to alter the will in a specified particular negatives any intention to alter it in other respects. 1 Schouler on Wills, Exrs. & Admrx. (5th Ed.), § 487; Thompson on Const. of Wills (1928), § 101; 1 Page on Wills (2d Ed.), (1926), §§ 811, 865; 51 A. L. R., note, pages 694, 695.

Mr. Schouler thus expresses it at Section 487:

"A codicil is a part of a will, but with the peculiar function annexed of expressing the testator's afterthought or amended intention. The codicil should be construed with the will itself; and from its very nature it may, as a context, confirm, alter, or altogether revoke an intention expressed in the body of the instrument to which it is annexed. A will and codicil are to be construed as one instrument and are to be reconciled if possible; but if plainly inconsistent, and the more so if the later instrument expressly revokes whatever is inconsistent with it, the codicil must prevail; for a later repugnant disposition as against an earlier stands on a footing of presumption far stronger than the later clause in one and the same contemporaneous instruments.

"Yet even here a codicil should be so construed as only to interfere with the dispositions made in the will to the extent needful for giving full effect to the codicil. And it is held that the determination expressed by a codicil to alter the will in a special particular, negatives by implication any intention to alter it in other respects."

And Mr. Thompson says at Section 101:

"* * * The language of the codicil must be harmonized with the will where there is no repugnancy, and the language of each should be so construed as to give effect to every word and every part thereof without change or modi-

fication; and unless there is an irreconcilable conflict or discrepancy between them, the codicil is no more the last expression of the testator's intent than if it had been written as a part of the original instrument. * * * In case of ambiguity in the codicil the testator's intent than if it had been written as a part of the original instrument. * * * In case of ambiguity in the codicil the testator's intent must be gathered from both will and codicil read together in the light of circumstances surrounding the testator at the time the documents were executed. A gift clearly expressed in a will will not be cut down by ambiguous expressions in a codicil, but where the codicil declares a deliberate purpose to change the will, and does so in clear language, the Court will follow the mandates of the codicil embodying the change."

The codicil revokes the will in so far and only so far as absolutely necessary to give its own provisions effect: 1 Schouler on Wills (5th Ed.), § 437; (6th Ed.), § 628; 2 Schouler on Wills (6th Ed.), § 904; 51 A. L. R., note, pages 693-699, 710, and cases; 1 Page on Wills, § 811, pages 1376, 1377; Thompson on Const. of Wills, § 97, page 183.

Mr. Schouler thus expresses it in Section 437:

" * * * It is a fundamental maxim that no codicil shall revoke a prior will more than is absolutely necessary at all events to give its own provisions effect; unless it contains an express clause of full revocation. * * *

"Thus, it is held that a declared purpose therein to alter the will in one or more stated respects implies that it is not altered in other respects. And that a specific gift in a will is not revoked by a general gift in the codicil. And that a general expression in the codicil must be confined to its meaning in the will. And that a clear gift in the will is not revoked by vague or doubtful expressions in the codicil. And that a codicil will not operate as a revocation of a previous will beyond the clear import of its language, nor upon any suggestion of repugnancy, save so far as may be necessary to give that codicil effect."

51 A. L. R., page 693 thus puts it: "* * * But a codicil is a confirmation except as to express alterations which it may contain, must be borne in mind. * * *"

And at page 695 of 51 A. L. R.: "The several clauses of the will and codicil should, if possible, be made to harmonize so as to give effect to every provision, provided that such construction is not inconsistent with the general intent and purpose of the testator as gathered from the entire instrument."

Again, from pages 696-699 of 51 A. L. R.: "* * * A will is not deemed revoked by a codicil if the language of the codicil is capable of any other reasonable construction— where revocation of some provision of the will is not absolutely necessary to give effect to the codicil, or is less clear and certain than that in the will. The codicil must be equally clear and specific with the provisions of the will which are claimed to be revoked; and the Court will never allow a gift in a will to be cut down by a codicil containing ambiguous or doubtful expressions. * * * In other words, there must be absolute inconsistency between the provisions of the instrument in order to work a revocation; and, if the provisions of the will and codicil can stand together, there will be no revocation, for revocation of the earlier disposition of the will by a codicil on the ground of repugnancy, as in the case of implied revocation by a will, is never anything but a rule of necessity, and operates only so far as it is requisite to give the later provision effect * * * the codicil will not operate as a revocation by implication of the terms of the will further than is absolutely necessary in order to give effect to the provisions of the codicil repugnant to or inconsistent with those of the will."

Mr. Page says, in Section 811, pages 1376, 1377: "* * * the provisions of the will are to be disturbed only as far as are absolutely necessary to give effect to the provisions of the codicil; and in other respects such a will and codicil are to be construed together. If the will imposes conditions upon

the gifts which are made therein, it will be presumed that a gift made by a codicil thereto is subject to the same conditions.

And Mr. Thompson, Section 97, page 183, says: "To the extent that a codicil confirms the provisions of the original will, such provisions are to be considered as later in point of position, and, therefore, govern the codicil."

Mr. Schouler, in Section 628, in dealing wth the subject of a revocation of a former will by a last will or a codicil which disposes of an estate differently, and the fact that it revokes the former will so far and only so far as absolutely necessary, says: "An express revocation in the codicil of one part negatives by implication an intention to alter it in other respects. And the codicil does not revoke, but republishes and reaffirms the will and is to be construed with it as one entire instrument. * * * That a specific gift in a will is not revoked by a general gift in a codicil. And that a general expression in a codicil must be confined to its meaning in the will. And that a clear gift in the will is not revoked by vague or doubtful expressions in the codicil. And that a codicil will not operate as a revocation of a previous will beyond the clear import of its language, nor upon any suggestion of repugnancy save so far as may be necessary to give the codicil effect"—citing many authorities, including I Jarm., page 176.

And Mr. Schouler, in Volume 2 of the Sixth Edition, at Section 904, speaking of cases where the codicil and the will are inconsistent, says: "Yet even here a codicil should be so construed as only to interfere with the disposition made in the will to the extent necessary for giving full effect to the codicil, and a gift clearly expressed in a will should not be cut down by ambiguous expressions in the codicil. * * * A specific change of disposition made by a codicil negatives an intent to make any other change in the will and the determination expressed by a codicil to alter the will in a spe-

cific particular negatives by implication any intent to alter it in other respects."

III. Should Mrs. Young have been adjudged entitled to an interest of one-third in the corpus of the personal estate after she had received the income therefrom bequeathed to her under the will?

Section 7 of the will is: "I direct that my executors convert my other personal goods and chattels, such as live stock, farming tools, etc., into cash by sale of same publicly or privately, as they may deem best. My executors after payment of my debts, funeral expenses, special legacies and cost of administration of my estate, shall invest and keep invested all of my personal estate, and shall from time to time, as they deem necessary and advisable, change such investments. They shall pay over annually to my beloved wife, Iva, during her life, the income from such investments, after paying expenses, for her sole use and benefit   *   *   *" (omitting the revoked paragraph of this section).

The referee reports:

"It is conceded by both plaintiff and defendants that under this provision of the will testator created a trust estate in the personalty for the benefit of his wife; that the trust terminated upon her death. It is not contended that any provision of the codicil can be construed as a revocation of these provisions of Item 7." No exception has been taken to this conclusion. That the trust was created, in part at least, for her benefit, there can be no doubt; that it was created for her sole benefit, there is great doubt. Considering this trust provision in connection with Section 11, quoted above, there being no indication whatever in Section 7 that the corpus of the fund should pass, in whole or in part, to her, it seems perfectly clear that under Section 11 it passed to the brothers and sisters of the testator. If there had been no codicil, there could have been no doubt of this.

The plaintiff's contention, as to this corpus of personal estate, as her contention is as to the real estate, is that the

result of the comparison of the two sections, has been revoked by Section 4 of the codicil. It not only is not revoked, but in Section 8 of the codicil it is specifically declared, that, if not revoked or modified, it shall "stand and be carried out as written."

I think therefore that as a matter of law, it should be held that Section 4 of the codicil did not revoke the interest which was bequeathed to the brothers and sisters by Section 11 of the will.

But if it should be held open to a discussion of the intention of the testator, I think that the same result must be attained.

The contention of the plaintiff naturally leads to the conclusion announced by the learned referee: "I think it is sufficient answer to this contention to say that such one-third absolute interest is a right of property which could be sold, pledged, hypothecated or otherwise disposed of by her if she should so desire."

I thoroughly indorse the following conclusion of the referee: "If, therefore, George W. Young saw fit to give his wife an interest for life, to wit, the net income from his personal estate, after certain debts and legacies were paid, and at the same time vest in her the right to one-third of the remainder or residue thereof, I cannot think of anything to prevent it having legal effect."

He certainly did not do so in express terms, as I have already discussed in reference to the corpus of the real estate. Can it be said that, considering both instruments as a single will, the written expressions of his will indicate an intention to do so? As a matter of law, it requires more than an indication; there must be "plain, clear and explicit terms" compelling the conclusion that such was his intention.

The will is replete with suggestions and directions for the preservation of the corpus, holding it intact and having it managed by the most efficient business men, doubtful all through of the capacity of his wife to handle it. If the con-

clusion of the referee be sound that she had the right and power to sell it, to pledge it, to hypothecate it, to borrow money upon it, or otherwise dispose of it, what becomes of the carefully devised testamentary design for its preservation and efficient management?

The interpretation contended for runs counter to the rule that is discussed in reference to the real estate, that an estate once given (to the brothers and sisters under Section 11) cannot be cut down by a subsequent provision unless the intention so to do is of compelling force.

For these reasons I think that the decree and report should be modified as herein indicated.