WHEELING DOLLAR SAVINGS & TRUST CO., *etc.*

*v.*

LYDIA SPEIDEL LEEDY

(No. 13498)

Decided June 24, 1975.

*Riley & Yahn, Arch W. Riley, Greg L. Cooey, Howard W. Friedrichs* for appellant.

*Phillips, Holden & Marshall, John D. Phillips, David B. Holden* for Wheeling Dollar.

*Galbraith, Seibert & Kasserman, George H. Seibert, Jr., James E. Seibert* for Ohio Valley Gen. Hosp.

HADEN, CHIEF JUSTICE:

This is an appeal by Lydia Speidel Leedy from a final order of the Circuit Court of Ohio County in a declaratory judgment action brought by Wheeling Dollar Savings & Trust Co., trustee, under a trust created by the last will and testament of Hal Speidel, deceased. The final order complained of held that the trust created by Item Fifth of the Hal Speidel Will prohibited the invasion or take-down of the corpus of the trust at the request of and for the benefit of the appellant, Lydia Speidel Leedy, life beneficiary of the trust.

Hal Speidel, a resident of Ohio County, died March 7, 1931, and disposed of his property by a last will and

testament dated January 30, 1931. The decedent was survived by his widow, Gertrude L. Speidel, who has since died, and a daughter, Lydia Speidel, now Lydia Speidel Leedy, a childless person.

The will bequeathed one-third of the testator's estate outright to his widow, Gertrude L. Speidel. The will also made a specific bequest of $2,000.00 to a church in Wheeling. The fourth item of the will expressed the desire of the testator that his co-executrices, the widow and the daughter, appellant herein, continue the support of two collateral relatives of the testator. The amount of such support was committed to the sound judgment of the co-executrices.

Item Fifth of the will established a trust disposing of the residue of the testator's estate. The trust language of this residuary clause furnished the basis for the litigation resulting in this appeal. Item Fifth provides as follows:

"Fifth: All of the rest, residue and remainder of my estate, whether real, personal or mixed property, I give, devise and bequeath to the Dollar Savings and Trust Company of the City of Wheeling, State of West Virginia, [now known as Wheeling Dollar Savings & Trust Company] as trustee, to be held in trust and for and on behalf of my daughter, Lydia Speidel, upon the following conditions, to-wit: The income of the said part of my estate so placed in trust for the benefit of my said daughter shall be paid at stated intervals of six months to my said daughter, during the term of her natural life. And I hereby authorize and empower the said trustee to sell, convey, assign or transfer at any time during the existence of the trust so created, any part of the trust property as the interests of the trust or the advantages of my said daughter may seem to require. And I further authorize and empower the said trustee to make such investments of the said trust estate, or any part thereof, as the said trustee may deem proper and to the best interest

of my said daughter. In case my said daughter shall die leaving a child or children, then the said trust estate hereby created shall be and become the absolute estate and property of the said child or children, to be divided equally, share and share alike, if there be more than one, when the youngest child of my daughter reaches the age of twenty-one years; and in case my said daughter dies without leaving issue, or in case no child of hers reaches the age of twenty-one years, then all the rest, residue and remainder of said trust estate existing at the time of her death shall pass to and become the absolute property of the Ohio Valley General Hospital of Wheeling, West Virginia, to constitute an endowment fund in the name of and in memory of my father, Joseph Speidel, and my mother Lydia Speidel, and the income of which shall be used and applied by the trustees of said hospital, wholly, for the care and treatment of indigent and poor patients confined and being treated in what is known as the free or charity wards."

Until 1971, the trustee paid all of the net income of the trust created by this item of the testator's will at regular intervals to Lydia Speidel Leedy. Conversely, the trustee never has paid over or distributed any of the principal of the trust estate to Mrs. Leedy.

Believing that the residuary clause of the will permitted her access to the corpus of the trust estate, Mrs. Leedy requested that the trustee distribute the principal of the trust to her. The trustee refused, maintaining it did not have the power under the will to make any principal distributions to Mrs. Leedy, in that she was a life tenant merely, and entitled to income only from the trust corpus. Mrs. Leedy then requested the trustee to institute the declaratory judgment action resulting in this appeal so as to secure a construction of the will and a resolution of alleged ambiguities contained in Item Fifth of the will. At Mrs. Leedy's request, the trustee instituted the declaratory judgment action, but, nevertheless, maintained that the will was not ambiguous.

After making certain findings concerning the will, the trial court determined the testator's intent from the whole will was that the trustee had no power under Item Fifth to invade the principal of the trust for the benefit of, or to distribute the principal to the appellant, Lydia Speidel Leedy. In the action below, the alternative beneficiary, the Ohio Valley General Hospital Association, appeared and defended its inchoate interest and that of the trust estate in preserving the corpus of the trust.

Upon motion of all parties for reasonable attorneys' fees in the prosecution and defense of the declaratory judgment action, the court denied attorney fees to the appellant, Lydia Speidel Leedy but granted, without objection, reasonable attorney fees in the sum of $15,000.00 to the Ohio Valley General Hospital Association.

Two principal issues are before the Court on appeal. First, whether the life beneficiary, Lydia Speidel Leedy, was entitled to direct the trustee to invade, consume or take-down the corpus of the trust estate for her benefit. Secondly, whether the parties were entitled to an award of reasonable attorney fees expended in the declaratory judgment action below.

All parties to this appeal agree that in interpreting a will, the primary objective of the court must be to carry out the intention of the testator, unless that intention violates some positive rule of law or public policy. This intention must be ascertained from considering the wording of the will in light of the circumstances surrounding the testator when he made the will, *Cuppett v. Neilly*, 143 W. Va. 845, 105 S.E.2d 548 (1958), and from reading the will in its entirety. *Wiant v. Lynch*, 104 W. Va. 507, 104 S.E. 487 (1927); *Behrens v. Baumann*, 66 W. Va. 56, 66 S.E. 5 (1909); *Brant v. Virginia Coal & Iron Company*, 93 U. S. 326, 23 L. Ed. 927 (1876); *Buckle v. Marshall*, 176 Va. 139, 10 S.E.2d 506 (1940). *See generally, Weiss v. Soto*, 142 W. Va. 783, 98 S.E.2d 727 (1957).

The appellant contends that the trial court erred in holding that she did not have a fee simple absolute es-

tate in the corpus of the trust. This assignment of error is without substance. No party to this litigation disputes that Mrs. Leedy is a life beneficiary under the terms of the residuary clause. Appellant, however, asserts the will should be construed as having appended the power to consume the corpus of the estate in favor of the life beneficiary at her discretion and, if so construed, the life estate is converted into a "fee simple" in the trust *res*. This is not the law in this jurisdiction.

Where a will made after January 1, 1931 provides for a limitation over by way of remainder and, expressly or by implication, also provides that the first taker of the testator's property may use or dispose of such property absolutely, the limitation over shall not fail or be defeated except to the extent that the first taker shall have lawfully exercised the power of disposal. *W. Va. Code* 1931, 36-1-16; *McCauley v. Henry*, 143 W. Va. 770, 105 S.E.2d 129 (1958); *Weiss v. Soto, supra; Price v. Talkington*, 126 W. Va. 263, 27 S.E.2d 705 (1943). Accordingly, a life tenant or beneficiary with an appendant power of disposal takes something less than a fee simple absolute upon the death of a testator. *Flesher v. United States*, 238 F. Supp. 119 (N.D. W.Va. 1965); *see, In Re Estate of Evans*, W. Va., 194 S.E.2d 379 (1973).

So, while it is clear that Mrs. Leedy cannot be held to have been given an absolute estate in the trust corpus, the basic question of whether the testator intended to give her an appendant power to consume the corpus remains for answer. For that we look to the language of the will itself.

The general testamentary scheme of Hal Speidel is apparent from the substance of the residuary clause. Having made other provisions for his surviving widow, the testator bequeathed his remaining property to an independent trustee in trust for the following purposes: First, to pay the income from the corpus to his daughter Lydia at six-month intervals throughout her *life*; secondly, to vest the corpus of the estate *absolutely* in Lyd-

ia's children at her death; but, alternatively, if Lydia dies without issue, then third, to vest corpus of the estate *absolutely* in the Ohio Valley General Hospital.

In furtherance of the testamentary plan, the trustee was authorized and empowered to: (1) sell and convey at any time any part of the corpus "as the interests of the trust *or the advantages of my said daughter may seem to require* [;]" and (2) make investments of any part of the whole of the trust estate *"as the said trustee may deem proper and to the best interest of my said daughter."* (Emphasis supplied).

The appellant contended below, and now here, that the emphasized language coupled with introductory words used in the declaration of the trust: "I give, devise and bequeath to the ... Trust Company ... as trustee, *to be held in trust for and on behalf of my daughter, Lydia Speidel,* upon the following conditions, ...." (Emphasis supplied), demonstrated the testator's intention that his daughter was the principal object of his bounty and that the trust *res* was to be transferred or invested by the trustee at her direction. Based upon these premises, the appellant contends that the right to consume the corpus and to dispose of it by will or *inter vivos* transfer arose by implication, if not by express direction, from the testator's language. To bolster her arguments, appellant also alludes to the absolute discretion given her and her mother, as co-executrices to make provision for collateral relatives as found in Item Third of the will as further evidence of the testator's intention to vest control of the estate in her.

The propositions argued by appellant do not find support in the law of this jurisdiction. Where a will limits a beneficiary to a life estate in express terms and provides for absolute vesting in remainders, the burden is on the life tenant to demonstate a "superadded power of disposition." *Wiant v. Lynch,* 104 W. Va. 507, 510, 140 S.E. 487, 488 (1927). This is so because the power of alienation, consumption or disposition is not a legal incident of a life estate in property. *See, McDonald, Committee v. Jar-*

*vis*, 64 W. Va. 62, 66, 60 S.E. 990, 992 (1908). In Item Fifth, the trustee is to pay the *"income* of the said part of my estate so placed in trust ... to my said daughter, *during the term of her natural life."* Upon her death the clause expressly provides that the trust estate shall be the "absolute estate and property" or *"absolute proper-ty"* of either alternative contingent remainder. The use of the word "income" in the devise or bequest to the life tenant contrasts markedly with the use of the words "absolute property" to describe the estate devised or bequeathed to the remaindermen; and the language employed throughout the clause is consistent with the character of the respective interests described.

Even before *W. Va. Code* 1931, 36-1-16 took effect to preserve limitations over following a life estate with appendant powers, this Court would not construe the language of an instrument as reposing a power to alienate or dispose of property in the life tenant unless the power of disposal was unlimited, unqualified and unmodified. *Newman v. Newman*, 60 W. Va. 371, 55 S.E. 377 (1906); 28 Am.Jur.2d *Estates* § 83 (1966). Accordingly, there are several decisions holding that a gift of a life estate, coupled with a restricted or limited power of disposal, or that a gift of property to a wife with the right to use it for maintenance and support, or with the provision that if any of the property "is left", "remains" or "exists" after the death of the life tenant, it should vest in remaindermen, constituted merely a life estate in the first taker. *Smith v. Smith*, 134 W. Va. 842, 62 S.E.2d 347 (1950); *Wiant v. Lynch, supra; Wise v. Hinegardner*, 97 W. Va. 587, 125 S.E. 579 (1924); *Kesterson v. Brown*, 94 W. Va. 447, 119 S.E. 677 (1923); *Woodbridge v. Woodbridge*, 88 W. Va. 187, 106 S.E. 437 (1921); *Stout v. Clifford*, 70 W. Va. 178, 73 S.E. 316 (1911); *Behrens v. Baumann*, 66 W. Va. 56, 66 S.E.5 (1909).

We are particularly persuaded by the *Behrens* and *Woodbridge* decisions. In both cases, language equivalent to the wording employed in the Speidel Will was construed not to give the first taker more than a life estate nor any entitlement beyond income. These inter-

pretations obtained even though the first taker, rather than an intermediary trustee, was given rather extensive powers to use and, in *Woodbridge*, to sell the estate.

There is yet another point of significance to be found in the Speidel Will. Here, the testator expressly appointed an independent trustee to administer the trust. If it was the testator's purpose to give the life beneficiary the power to dispose of or alienate the corpus, then what was the necessity for the trust and the independent trustee? We note that *W. Va. Code* 1931, 36-1-17, effective before this will was executed, converts "dry" trusts into absolute legal estates by operation of law. It is more likely that the testator intended to preserve an estate for the remaindermen. In a similar factual situation, the appointment of a trustee and the use of a trust instrument as a vehicle of disposition was found to be compelling evidence that the first takers were not to be accorded full ownership of the property in litigation. *Kesterson v. Brown, supra,* at page 454 of the West Virginia Report; see also, *Woodbridge v. Woodbridge, supra,* at page 190 of the West Virginia Report.

We hold that Lydia Speidel Leedy has no power to dispose of the trust *res* nor does she have the power to direct the trustee to pay over the corpus to her. Nowhere in the will can an express power to invade the corpus be found; nor does such power arise by clear implication. The will is unambiguous. There is no error in the ruling of the trial court on this point.

The issue of attorney fees is settled by several holdings of this Court in *Security National Bank & Trust Co. v. Willim,* 153 W. Va. 299, 168 S.E.2d 555 (1969). From our previous discussion and rulings it is apparent that we do not regard the interests of appellant to be compatible with the overall purposes of the trust created by Item Fifth of the Hal Speidel Will. The appellant's contentions, if successful, would have destroyed the testator's dispositive plan and terminated the trust. Accordingly, we are impelled to apply the *Willim* rule:

> "The services of an attorney cannot be rewarded by fees paid out of an estate where such attor-

ney has represented litigants who sought to recover funds from an estate in a purely adversary capacity." *Syllabus* point 3., *id.*

As to the trial court's ruling that Ohio Valley General Hospital Association was entitled to reasonable attorney fees in the amount of $15,000.00, there appears to be no error on the merits according to the holding of the *Willim* case, *supra*; but assuming possible error, this Court will not consider nonjurisdictional questions raised for the first time on appeal. *Syllabus* point 1., *State Road Commission v. Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (1964).

The judgment of the Circuit Court of Ohio County is affirmed.

*Affirmed.*