15761

PEECKSEN v. PEECKSEN

(34 S. E. (2d), 787)

*v. Pruitt,* 57 S. C., 155, 35 S. E., 485, that an action for the admeasurement of dower in lands is a cause in equity.

Sections 1380 and 1382, Pomeroy's Equity Jurisprudence, Third Edition, read as follows:

"The right known as the wife's right of dower was purely legal, and was asserted at law through the writ of right of dower, and the writ of dower *unde nihil habet,* both of which were in the nature of real actions. As early as the reign of Queen Elizabeth, courts of equity began to assume jurisdiction over cases of dower, but only tentatively and as ancillary to proceedings at law. This jurisdiction, originally narrow and auxiliary, has, by the course of decision, and on familar equitable principles, been expanded to the extent of affording complete relief between the parties."

"Although it was thus, at one time, supposed that the jurisdiction of equity was ancillary, and could not attach in the absence of impediments at law, it is now well settled that courts of equity have concurrent jurisdiction in cases of legal dower, or dower in legal estates. The advantages of the equitable procedure are obvious. An outstanding term could be removed and satisfied; a partition in the case of undivided interests could be decreed, and an account could be taken; fraudulent conveyances could be canceled; and antagonistic claims to the subject-matter could be determined without multiplicity of suits. Equity will also award damages which could not be recovered at law on an application for dower. At law, if the tenant dies after judgment, and before assessment of damages, the damages are lost to the widow; and if she herself dies before such assessment of damages, her personal representatives are without recourse. In these instances, the widow, or her personal representatives, by a resort to equity obtain adequate relief."

We are satisfied that this action is of an equitable nature, and was properly referred to the Master in Equity; and that it is not an action at law for the

*Mr. Nathan Rosen,* of Charleston, S. C., Counsel for Appellants,

*Messrs. John I. Cosgrove, Frank H. Bailey, Legge and Gibbs,* all of Charleston, S. C., Counsel for Respondents,

July 31, 1945.

Mr. Associate Justice Oxner delivered the unanimous Opinion of the Court.

This action was brought for the purpose of having the Court construe the will of J. N. Peecksen, who died on November 20, 1941, leaving of force the following as his

last will and testament, which was executed on July 26, 1938:

"All my real estate and personal property I will to my children, Lloyd, Hattie, Ray, Willie, John and my granddaughter Harriet and in case of their death their part to go to their children and so on; to be carried on the same as I have done. Any property that is mortgaged to be cared for the same as I have; with the exception of Race & Rutledge Ave. (southeast corner) and 37 and 39 Race Street that I leave to Ray P. Stevens to cover a mortgage. All insurance policies' have on my children and grandchildren to be kept up and turned into the estate when they become due. Anytime my heirs see an advantage to sell, this may be done by all agreeing. If a son should die and leave a widow but no children, then the widow shall receive his share, as long as she remains the widow Peecksen. At her death, her share shall go back to the estate. In case of death of grandchildren, if no children survive them, their share to come to the estate. All are to share and share alike. My heirs are to serve without bond. I leave my three sons, Lloyd, Willie and John as executors, and my daughters, Hattie and Ray as executrix."

At the time of his death, the testator was a widower in his seventies. Three sons and two daughters survived him, namely: J. Lloyd Peecksen, John N. Peecksen, William F. Peecksen, Ray P. Stevens, and Hattie P. Weeks. All five of these children are named in the will as devisees and were appointed by the testator as executors and executrices thereof. The testator had one other child, Wyatt P. Stevens, who predeceased him leaving one child, Harriet, the granddaughter referred to in the first sentence of the will. These five children and the grandchild referred to would have constituted his sole heirs at law and distributees had he died intestate. At the time of the testator's death, J. Lloyd Peecksen and John N. Peecksen were married but had no children, William F. Peecksen was unmarried, Ray P.

Stevens was married and had one child, and Hattie P. Weeks was married, and had three children. One daughter, Ray P. Stevens, died on February 15, 1944, which was subsequent to the death of the testator, and left surviving one child. John N. Peecksen now has one child who was born after the death of the testator. The testator, therefore, had at the time of his death five grandchildren, one of whom was the child of a daughter who had predeceased him.

The testator's estate consisted almost wholly of real property situated in the City of Charleston, where he resided. This real estate was appraised at $110,000.00. He left only a small amount of personalty.

All persons who now have, or in the future may have or claim, any interest in the estate under the terms of the will, or otherwise, were made parties to the action so that there could be a complete adjudication of all possible interests in the estate. It may not be amiss to state that the issues involved do not arise from any personal differences or animosities amongst the parties. The action was brought to remove any uncertainties relating to the construction of the will and those were to take thereunder. Although the action may be termed a "friendly" suit, all those having any possible interest in the estate have been ably represented by counsel who have zealously sought to protect their rights. The case was referred to the Master for Charleston County. In reference to the second and third sentences of the will, the Master found as follows:

"The second sentence of the will reads as follows: 'Any property that is mortgaged to be cared for the same as I have; with the exception of Race and Rutledge Avenue (southeast corner) and 37 and 39 Race Street that I leave to Ray P. Stevens to cover a mortgage.' I find that by this sentence, it was the intention of the testator that his mortgaged property other than the property mortgaged to Ray P. Stevens, be protected from foreclosure by the payment of taxes, insurance and interest, and that this direction was

purely advisory. However, the intention of the testator is clear that the property at Race and Rutledge Avenue, and 37 and 39 Race Street, which said property is encumbered by a mortgage from the testator to Ray P. Stevens, dated October 18, 1928, and recorded in the R. M. C. Office for Charleston County in Book H-35 at page 105, be devised to the said Ray P. Stevens in fee simple in full satisfaction of the said mortgage indebtedness.

"The next sentence in the will reading, 'All insurance policies I have on my children and grandchildren to be kept up and turned into the estate when they become due,' according to the evidence refers to policies of insurance issued by the Penn Mutual Insurance Company. The insureds named in these policies are Harlie H. Stevens, the younger, and Harriet E. Stevens, and the beneficiary thereof was Mrs. Ray P. Stevens, the mother of Harlie and the stepmother of Harriett. As the testimony shows that the testator had no interest in these policies, his reference to them is surplusage."

There were no exceptions by any of the parties to the construction placed by the Master on the foregoing portion of the will, it being conceded that the construction adopted is the correct one. The Master further held that it was the intention of the testator to name his five children as executors and executrices of his will who were to serve as such without bond. There is also no exception to this portion of the report of the Master.

The Master further found that "it was the intention of the testator to devise in fee simple all of his (other) real estate and personal property to his children, Lloyd, Hattie, Ray, Willie, John and his granddaughter, Harriet E. Stevens, provided these named devisees should be alive at the death of the testator." As all these devisees survived the testator, the Master recommended that the will be construed as vesting such property on the death of the testator in fee simple in the children and grandchild named, as tenants in

common, in equal proportions. Exceptions were duly filed by certain of the parties to this portion of the report of the Master. The case was duly heard in the Circuit Court on these exceptions and the Circuit Judge filed an order overruling all exceptions and affirming the report of the Master. From this concurrent holding of the Master and Circuit Judge, the wives of J. Lloyd Peecksen and John N. Peecksen, the child of John N. Peecksen, and the children of Hattie P. Weeks have appealed. They contend that the proper construction of the will as a whole "is that the testator devised all of his real estate and personal property to his named children and graddaughter Harriet for life, and at their death to their children, but should a son die leaving a widow, without children, his share would pass to her for life or so long as she shall remain the widow Peecksen, with remainder to the estate of J. N. Peecksen, deceased."

The construction of the first clause of the will when considered apart from the other clauses presents little difficulty. The devise there is to the testator's children and his "granddaughter Harriett and in case of their death, their part to go to their children and so on; to be carried on the same as I have done." There being nothing in this clause indicating a contrary intent, the phrase, "in case of their death" refers to the death of a devisee in the lifetime of the testator. In *Presley v. Davis, Administrator,* 7 Rich. Eq., 105, 62 Am. Dec., 396, the Court said: "It is the established doctrine that, wherever the gift takes effect in possession immediately on testator's death, words of survivorship refer to the date of testator's death and are intended to provide for the contingency of the death of the objects of his bounty in his lifetime; unless some other point of time be indicated by the will." The words "and so on" contained in this clause do not affect the estate already given. *Nix v. Ray,* 5 Rich., 423. The phrase "to be carried on the same as I have done" contains mere words of advice, recommendation, or desire.

It seems, therefore, clear that under the first clause a fee-simple title vested in the children and grandchild therein named upon the death of the testator. Appellants concede that this is the proper construction of this clause when considered apart from the remaining portions of the will, but contend that the estate thus given is qualified or cut down so as to give the devisees therein named only a life estate by the following subsequent clauses: "If a son should die and leave a widow but no children, then the widow shall receive his share, as long as she remains the widow Peecksen. At her death, her share shall go back to the estate. In case of death of grandchildren, if no children survive them, their share to come to the estate."

It is true that in construing a will, it must be considered as a whole and, if practicable, effect must be given to every clause contained therein; and the Court should, if it can be done by any reasonable construction, harmonize apparently inconsistent and repugnant clauses so as to give effect to each in accordance with the testator's general intention. *Burton v. Burton,* 113 S. C., 227, 102 S. E., 282; *Lemmon et al. v. Wilson et al.,* 204 S. C., 50, 28 S. E. (2d), 792. But we do not think these subsequent clauses have the effect claimed by appellants. We are of opinion that the only reasonable construction to be placed on these subsequent clauses so as to make them harmonize with the first portion of the will is that the testator was undertaking to provide for the contingency of a child predeceasing him, leaving no children. In other words, these subsequent clauses should be construed as substitutional in nature and as not intended in any way to abridge the estate already given to the children and grandchild in the first clause except by way of providing for the contingency mentioned.

As heretofore stated, appellants contend that when the subsequent clauses are considered in connection with the first clause, the proper construction of the

whole is that the testator gave his property to "his named children and granddaughter Harriet for life, and at their death to their children, but should a son die leaving a widow, without children, his share would pass to her for life or so long as she shall remain the widow Peecksen, with remainder to the estate of J. N. Peecksen, deceased." This construction gives no effect to the subsequent clause, "in case of death of grandchildren, if no children survive them, their share to come to the estate." Under the proposed construction, a life estate would be given to the grandchild Harriet and a different estate to the other grandchildren when neither the contents of the will nor the circumstances surrounding the testator afford any reasonable basis for such distinction between grandchildren. Under appellants' theory no limitation over is made upon the death of a daughter or the granddaughter Harriet without children, so that in the event of that contingency, what becomes of the fee? What was intended as to the disposition of the remainder in fee upon the death of any son who never married? One was unmarried at the time of the death of the testator and is still unmarried. A careful consideration of appellants' proposed construction shows that it would lead to an unusual and unnatural result. On the other hand, if the subsequent clauses are construed as substitutional in nature, a result is reached which it is reasonable to suppose that the testator intended. His children were the natural objects of his bounty. When the testator executed his will, his children were of mature age, some were married with children, one was unmarried, and there was a daughter of a deceased daughter. If these survived him, they would constitute his sole heirs at law. We think he intended an equal division between his children and the daughter of a deceased child. The testator then considered the possibility of the death of one or more of these devisees during his lifetime and then sought to provide for such contingency. It may be suggested that the testator was at such an advanced age he would not have undertaken to

provide for such contingencies occurring during his lifetime, but, as stated in *Sealy v. Laurens*, 1 Desaus, 137, "it is not uncommon for mankind to flatter themselves with an extension of the thread of life." This construction also gives due recognition to the general rule that the law favors the vesting of estates at the earliest time possible. *Walker v. Alverson*, 87 S. C., 55, 68 S. E., 966, 30 L. R. A. (N. S.), 115; *Albergotti et al. v. Summers et al.*, 205 S. C., 179, 31 S. E. (2d), 129. The clause in the will to the effect that "any time my heirs see an advantage to sell, this may be done by all agreeing" adds strength to this construction, as it shows that the testator meant that a fee-simple title should vest immediately.

But if any doubt remains as to the construction above suggested, we think in any event the subsequent clauses do not show a clear intention to cut down or qualify the estate previously given to the children and grandchild. The words in the subsequent clauses, considered in the light most favorable to appellants, are at least of doubtful import and under the well-settled rule could not have the effect of cutting down or destroying the estate or interest given in the first clause by words of clear and ascertained legal signification.

In *Walker v. Alverson*, *supra* (87 S. C., 55, 68 S. E., 968), the Court said: "When a gift is made in one clause of a will in clear and unequivocal terms, the quantity or quality of the estate given should not be cut down or qualified by words of doubtful import found in a subsequent clause. To have that effect, the subsequent words should be at least as clear in expressing that intention as the words in which the interest is given." The rule is stated in *Adams et al. v. Verner*, 102 S. C., 7, 86 S. E., 211, 212, in the following language: "One of the soundest rules of construction, founded by the sages of the law, the wisdom of which has been approved by succeeding generations as affording security and certainty to estates, is that, where an estate or interest is given in

words of clear and ascertained legal signification, it shall not be enlarged, cut down, or destroyed by superadded words in the same or subsequent clauses, unless they raise an irresistible inference that such was the intention." Many of the earlier case applying this rule are reviewed in *Adams v. Verner*. Some of the later cases are referred to in the recent case of *Newnham et al. v. Forest Hills, Inc.*, 195, S. C., 431, 12 S. E. (2d), 10, 12.

The case of *Newnham et al. v. Forest Hills, Inc., supra,* is somewhat analogous in principle. There the devise was "to my beloved children all the rest, residue and remainder of my property, the division of said property to be as follows:

" 'To William Harold Newnham—one-sixth share.

" 'To Eugene Newnham—one-sixth share.

" 'To Charles Albert Newnham—one-sixth share.

" 'To Genevieve Casson—one-sixth share.

" 'To Alys Louise Newnham—one-sixth share, and in case of the death of the said Alys Louise Newnham before she has received her share, her said share to go to Edna May Newnham. Proviso: If said Alys Louise Newnham marries, her share to be given to her heirs.

" 'To Edna May Newnham—one-sixth share, and in case of the death of the said Edna May Newnham before she has received her share, her said share to go to Alys Louise Newnham. Proviso: If said Edna May Newnham marries, her share to be given to her heirs.

"'In case of the death of William Harold Newnham, Eugene Newnham, Genevieve Casson, Charles Albert Newnham, their respective shares to revert to their heirs.' "

It was contended that the provisos as to the deaths of the children cut their interest from a fee-simple to a life estate in each instance. This contention was not sustained. The Court held that the fee first given to the children could not be cut down by subsequent words of doubtful import and that the subsequent provisions were inserted to take care of

the contingency that one or more of the children might predecease the testatrix.

The case of *Shaw v. Erwin*, 41 S. C., 209, 19 S. E., 499, also tends to sustain the conclusion herein reached.

We think the Master and Circuit Judge correctly construed the will. All exceptions are overruled and judgment below affirmed. ·

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.